## VICTORIO v. UNITED STATES.
No. 49541.

United States Court of Claims.
July 10, 1950.

No appearance for plaintiff.

Thomas O. Fleming, Washington, D. C., with whom was Acting Assistant Attorney General Newell A. Clapp, for the defendant. John B. Miller, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

The defendant has moved the court to dismiss plaintiff's petition on the grounds that it does not state a cause of action within our jurisdiction and further that it does not comply with certain rules of the court.

We need only to consider defendant's first ground for its motion as we consider that sufficient in itself to require a dismissal of the petition.

At the outset, it is well to emphasize that Title 28, § 1491, U.S.C.A., gives this court jurisdiction of claims only *against the United States.*

The petition in this case is entitled "Petition for Review and Reconsideration," and concerns itself with a claim filed by this petitioner with the Claims Service of Philrycom (Philippine Ryukyus Command) of the United States Army in the Philippines on March 27, 1948, for reimbursement of the value of cattle allegedly furnished certain guerrilla forces known as Hunters ROTC Guerrillas of Luzon, during the Japanese occupation of the Philippine Islands during the years 1942 to 1945, inclusive.

Further recitations of the petition disclose that the said Claims Service disapproved the claim and that error is assigned to the Claims Service in its act of disapproval.

An argument and brief in support of the allegation of error is set forth, after which the petition concludes with the prayer that "the entire records of the case be caused to be forwarded to that [sic] Honorable Court for review of the whole evidence and favorable reconsideration of the claim made."

From a consideration of the matters contained in the petition, and the character of the Hunters ROTC Guerrillas of Luzon as a recognized part of the Army of the Philippines, we are of the opinion that plaintiff's claim is against the Philippine Government and not against the United States.

The Constitution of the Philippine Commonwealth adopted February 8, 1935, provided, in article VII, section 11(2):

"The President [of the Commonwealth] shall be Commander-in-Chief of all armed forces of the Philippines and, whenever it becomes necessary, he may call out armed forces to prevent or suppress violence, invasion, insurrection, or rebellion. * * *"

750

The Ordinance appended to the Constitution provided:

"Section 1. Notwithstanding the provisions of the foregoing Constitution, pending the final and complete withdrawal of the sovereignty of the United States over the Philippines

\* \* \* \* \* \*

"(12) The Philippines recognizes the right of the United States \* \* \* upon order of the President of the United States, *to call into the service of such armed forces* all military forces organized by the Government of the Commonwealth of the Philippines. [Italics supplied.]"

It must be noted from the italicized language of this section of the Ordinance that the Philippine Army might be called "into the service of such armed forces [of the United States]." We believe this clearly discloses that it was the intention of the framers of this Ordinance to maintain the identity of the Army of the Philippines as such even when it was properly in the service of the armed forces of the United States.

The Philippine Army was authorized by and created pursuant to Commonwealth Act No. 1 enacted by the Commonwealth's National Assembly on December 21, 1935. On July 26, 1941, President Roosevelt issued a Military Order, 6 Fed.Reg. 3825, by the terms of which, "\* \* \* I hereby call and order into the *service* of the armed forces of the United States \* \* \* all of the organized military forces of the Government of the Commonwealth of the Philippines \* \* \*." On October 6, 1941, General MacArthur, by Special Orders No. 15, called the First Regiment of the Philippine Constabulary into the service of USAFFE, and on October 17, 1941 (Philippine time: October 18), General MacArthur, by Special Orders No. 46, called the remaining Philippine Army units on active duty into USAFFE.

The petition before us discloses that the Hunters ROTC Guerrillas were "organized" in the early part of 1942; hence, at the time of the issuance of the above orders by the President and General MacArthur, the Guerrillas were not a part of the *organized military forces* of the Philippines.

Shortly after Pearl Harbor, the Congress of the United States on December 17, 1941, made provisions for the "Army of the Philippines", 55 Stat. 813, as follows:

"For all expenses necessary for the mobilization, operation, and maintenance of the Army of the Philippines, including expenses connected with calling into the service of the armed forces of the United States the organized military forces of the Government of the Commonwealth of the Philippines, and expenditures incident to pay, allowances, operation, maintenance, and other activities of units and personnel of said organized military forces, and for the emergent mobilization and training of such forces, may be made without regard to the provisions of law regulating the expenditure of or accounting for funds of the United States but shall be expended and accounted for in a manner prescribed by the President of the United States, $269,000,000, to remain available until June 30, 1943, which shall be available for payment to the Government of the Commonwealth of the Philippines upon its written request, either in advance of or in reimbursement for all or any part of the estimated or actual cost, as authorized by the Commanding General, United States Army Forces in the Far East, of necessary expenses for the purposes aforesaid, \* \*."

If, then, we assume that the Hunters ROTC Guerrillas became a part of the organized forces of the Philippine Army in early 1942, it would appear that any claim for "pay, allowances, operation, maintenance, and other activities of units and personnel of said organized military forces" would be against the Government of the Commonwealth of the Philippines, which in turn would be reimbursed out of the funds so provided as "authorized by the Commanding General, United States Army Forces in the Far East."

Further evidence that the Philippine Army was regarded as a separate entity while in the "service of the Army of the United States" is found in the surrender order issued by General Wainwright on

May 7, 1942 (Philippine time) addressed to Major General Sharp, Commanding Visayan-Minanao Forces, in pertinent part as follows:

"* * * I decided to accept in the name of humanity his [General Homma's] proposal and tendered at midnight, night 6–7 May 1942, to the senior Japanese officer on Corregidor, the formal surrender of all *American and Philippine Army troops* in the Philippine Islands. * * *."

On July 2, 1942, Congress enacted 56 Stat. 628, providing again for the "Army of the Philippines" in identical language as that previously used in 55 Stat. 813, supra, except that the amount of funds was reduced from $269,000,000 to $28,313,000.

Again, if we assume that the Hunters Guerrillas became a part of the organized forces of the Philippine Army in early 1942, their alleged claims would be directed against the Philippine Government which was to be reimbursed upon request as authorized by the Commanding General of the USAFFE.

On July 1, 1943, Congress again provided for the "Army of the Philippines" 57 Stat. 365, in identical language as before, except the amount of money was reduced to $100, and later, on June 28, 1944, 58 Stat. 591, and on July 3, 1945, 59 Stat. 401, appropriated the sum of $100 for the said Army.

In October of 1944, when General MacArthur and the American Forces retook the Philippines from the Japanese, President Osmena, who had returned with MacArthur, issued Executive Order No. 21 providing in part as follows:

"Now, Therefore, I, Sergio Osmena, President of the Philippines, by virtue of the authority vested in me by the Emergency Powers Law, Section 22a and Section 27 of the Commonwealth Act Numbered One notwithstanding, do hereby ordain and promulgate the following:

"1. All persons, of any nationality or citizenship, who are actively serving in recognized military forces in the Philippines, are hereby considered to be on active service in the Philippine Army."

By this promulgation, the Philippine Army was reconstituted, it having been surrendered by General Wainwright on May 7, 1942, and "recognized military forces in the Philippines" placed on active service in the Philippine Army. Apparently, this order recognized for the first time some of the various guerrilla units which had been functioning against the Japanese occupants of the Islands.

A few months later, on January 31, 1945, General MacArthur issued an order, recognizing the Hunters ROTC Guerrillas, retroactive to May 7, 1942, as a "nonstandard element of the *Philippine Army serving with* the armed forces of the United States." Again, it must be noted that the separate identity of the Philippine Army was maintained not as a part of the armed forces of the United States, but *in the service of* or *serving with* that Army.

The full text of this order of recognition has not been presented to the court by either party but whatever it might have included, we agree with the defendant's contention that only Congress under Article I, Section 8, of the Constitution can raise and support armies for the defense of the United States and thus General MacArthur's order could not have had the effect of making the Guerrillas a part of the Army of the United States.

In 10 U.S.C.A. § 2, Congress defined the Army of the United States as follows:

"The Army of the United States shall consist of the Regular Army, the National Guard of the United States, the National Guard while in the service of the United States, and the Organized Reserve Corps, and shall include persons inducted into the land forces of the United States under sections 301–318 of Appendix to Title 50 [the Selective Service Act]."

It is clear, then, that if the Guerrillas were a recognized part of any army it was the Army of the Philippines and aside from the order above discussed, the recognition by President Osmena on October 28, 1944, plainly placed them on duty in the Philippine Army.

As late as February 18, 1946, 60 Stat. 14, Congress again set aside funds for the

Army of the Philippines upon the same terms as had been made previously, this time in the amount of $200,000,000.

We have considered the language of the various acts providing for the support of this army, and from that it is evident that the funds were to be expended in a manner prescribed by the President of the United States, available for payment to the Government of the Commonwealth of the Philippines as authorized by the Commanding General USAFFE.

■ Claims for reimbursement for supplies furnished to recognized guerrilla units were processed in the following manner: The United States Army investigators checked and verified the claims. Those found to meet the requirements set out in circular orders by General MacArthur were approved by the Claims Service which forwarded the approved claim and supporting voucher to the Chief of Staff, Philippine Army, attention of the Finance Officer, for payment from funds delivered to the Philippine Government by virtue of the various appropriation acts, Army of the Philippines, above set out. The American Government never paid the claimants directly but the Philippine Government presumably paid the individual claimant but did not account to the United States Government as it was not required to do so.

When General MacArthur returned to the Philippines from Australia, he brought with him the Claims Commission that had been functioning under him and this personnel was trained and formed the nucleus of the Claims Service in the Philippines. In causing the many claims to be sifted and recommending payment for those of merit, the Commanding General USAFFE (MacArthur) was exercising the authority vested in him by the acts of Congress appropriating money for the Philippine Army. This money was not made available to MacArthur for the payment of such claims but to the Philippine Government by express terms. Neither was the money made available for any agency of the American Government for the payment of claims arising in the Philippines.

The plaintiff in his answer to defendant's motion to dismiss, states, *inter alia,* "This claim, as far as can be ascertained locally is based on the Foreign Claims Act and AR–90." 31 U.S.C.A. § 224d provides in pertinent part:

"For the purpose of promoting and maintaining friendly relations by the prompt settlement of meritorious claims, the Secretary of War * * *, and such other officer or officers as the Secretary of War * * *, may designate for such purposes and under such regulations as he may prescribe, are * * * authorized to appoint a Claims Commission * * to consider, ascertain, adjust, determine, and make payments, where accepted by the claimant in full satisfaction and in final settlement, of claims * * * of inhabitants of a foreign country, including places located therein which are under the temporary or permanent jurisdiction of the United States, arising in such foreign country, including claims for damage * * * caused by Army * * * forces, or individual members thereof * * * incident to noncombat activities of such forces, where the amount of such claim does not exceed $5,000: Provided, That no claim shall be considered by such Commissions unless presented within one year after the occurrence of the accident or incident out of which such claim arises except that claims arising out of accidents or incidents occurring after December 6, 1941, but prior to May 1, 1943, may be presented at any time prior to May 1, 1944: * * * Provided further, That any such settlements made by such Commissions under the authority of such sections shall be final and conclusive for all purposes, notwithstanding any other provision of law to the contrary."

31 U.S.C.A. § 224e provides in pertinent part:

"All payments in settlement of claims under section 224d of this title shall be made out of the appropriation, current at the time of settlement, for * * * 'Finance Service, Army', as to claims settled by Commissions composed of officers of the Army."

AR–90, issued pursuant to the provision of the Foreign Claims Act, set out above, entitled "Claims for Damage to or Loss or Destruction of Property or For Personal Injury or Death Caused by Army Forces in Foreign Countries," created the Foreign Claims Commissions which functioned within the framework of the basic Foreign Claims Act.

█ We are of the opinion that the Claims Service in the Philippines did not and could not have functioned under AR–90 or the Foreign Claims Act for the following reasons:

(1) The Philippine Islands were a possession of the United States and therefore not a foreign country within the meaning of the Foreign Claims Act;

(2) The Foreign Claims Act limited its coverage to damages arising out of noncombat activities of the United States Army personnel and forces. The Claims Service in the Philippines heard the guerrilla claims which were combat activities in many instances, and further, as we concluded above, the guerrillas were not forces of the United States;

(3) The Foreign Claims Act limited the amount of recovery to claims of $5,000 or less, and any claim in excess thereof had to be certified to Congress for consideration. The Claim Service in the Philippines heard and paid claims which were approved without limitation on the amount involved;

(4) The Foreign Claims Act contained a one year limitation within which claims could be presented. This limitation did not apply to the Claims Service in the Philippines (Change 2, AR–90, dated October 3, 1947) and it entertained claims without regard to the one year limitation;

(5) Payments under the Foreign Claims Act were made direct to the individual claimants. As we have seen the Claims Service in the Philippines approved the claims but paid the amount direct to the Philippine Government, which in turn paid the claimants;

(6) The Foreign Claims Act provided that the payments were to be made from a special approved "Finance Service, Army"

while the Claims Service in the Philippines approved claims arising out of guerrilla activities and they were paid from an entirely different and special appropriation, "Army of the Philippines."

From this analysis, it is clear that the Claims Service in the Philippines did not function under the Foreign Claims Act, but was a special agency established by the Army to carry out the functions vested in the discretion of General MacArthur by the very terms of the various appropriation acts entitled "Army of the Philippines."

Our conclusions, therefore, as a result of the consideration which we have given the claim alleged in plaintiff's petition, are, first, that it is not a claim against the United States and hence not within the jurisdiction of this court; and, second, that the claim does not arise under the Foreign Claims Act. The defendant's motion is allowed and plaintiff's petition is dismissed.