## SORIANO v. UNITED STATES.

No. 49. Argued December 5, 1956.—Decided January 14, 1957.

*Prew Savoy* and *George W. Foley* argued the cause for petitioner. On the brief were *Mr. Savoy* and *Jay Pfotenhauer.*

*Roger D. Fisher* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub, Melvin Richter* and *William W. Ross.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This suit was filed in the Court of Claims by petitioner, a resident of the Philippines, to recover just compensation for the requisitioning by Philippine guerrilla forces

of certain foodstuffs, supplies, equipment, and merchandise during the Japanese occupation of the Philippine Islands. While decision on the merits would require a determination of the status of Philippine guerrillas as a unit operating in the service of the United States, we do not reach that question. We have determined that the Court of Claims lacks jurisdiction because the claim was not filed within the period provided by the statute, 62 Stat. 976, 28 U. S. C. § 2501.[1]

On July 26, 1941, pursuant to the Philippine Independence Act,[2] President Roosevelt ordered the Philippine Army into the service of the armed forces of the United States.[3] After the fall of Bataan and Corregidor in 1942, elements of this Philippine Army fled to the hills

---

[1] 62 Stat. 976, 28 U. S. C. § 2501, the pertinent part of which reads:
"Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed, or the claim is referred by the Senate or House of Representatives, or by the head of an executive department within six years after such claim first accrues.

.        .        .        .        .

"A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases."

[2] The Philippine Independence Act of March 24, 1934, 48 Stat. 456 et seq., provides in pertinent part:
"(12) The Philippine Islands recognizes the right of the United States to expropriate property for public uses, to maintain military and other reservations and armed forces in the Philippines, and, upon order of the President, to call into the service of such armed forces all military forces organized by the Philippine government." Id., at 457.

[3] Military Order of President Roosevelt, dated July 26, 1941, 6 Fed. Reg. 3825, which provides in pertinent part:
". . . I hereby call and order into the service of the armed forces of the United States for the period of the existing emergency, and place under the command of a General Officer, United States Army, to be designated by the Secretary of War from time to time, all of the organized military forces of the Government of the Commonwealth of the Philippines . . . ."

and continued military resistance against the Japanese as guerrilla units. These units, from time to time, requisitioned and commandeered supplies from Philippine civilians. Petitioner contends that these units were part of the United States Army having implied authority to bind the United States to pay for such supplies. He alleges that from September 1942 until the last requisition in January 1945 he delivered supplies to these guerrilla units of the value of $119,765.75. He filed a claim for this amount with the United States Army Claims Service on March 30, 1948. This claim was denied on June 21, 1948.

Thereafter on April 26, 1951, more than six years after the last alleged requisition, this action was filed in the United States Court of Claims. The Government moved to dismiss on several grounds, including (1) that the statutory limitation period had run, and (2) that the units were part of the Philippine forces for which the United States was in no manner responsible. In a *per curiam* order, 133 Ct. Cl. 971, after issue was drawn on the pleadings, the Court of Claims dismissed the suit on the authority of *Logronio v. United States,* 132 Ct. Cl. 596, 133 F. Supp. 395 (1955). In effect, this reaffirmed its earlier holdings that members of the guerrilla units of the Philippine Army were *not* part of the Army of the United States.[4] The limitation question was not passed upon.

We granted certiorari, 351 U. S. 917, to determine the validity of the claims of the petitioner and others in like position. After issuance of the writ in this case, the Court of Claims in *Compania Maritima* v. *United States,* 136 Ct. Cl. ——, 145 F. Supp. 935 (1956), held that a Philippine resident seeking redress against the United States was under a legal disability while hostilities

---

[4] *Victorio* v. *United States,* 91 F. Supp. 748 (1950), vacated, 122 Ct. Cl. 708, 106 F. Supp. 182 (1952) ; *Logronio* v. *United States,* 132 Ct. Cl. 596, 133 F. Supp. 395 (1955), overruling the second *Victorio* opinion, *supra.*

between Japan and the United States continued. The court further held that the claim of such a person must be filed within three years "after the disability ceases," i. e., by September 2, 1948. Apprehensive that this rule might be applied to his case, petitioner requested and we granted permission to argue the limitation question which, as we have said, had been raised but not considered at the time of the dismissal by the Court of Claims.

Petitioner urges that his suit was timely filed because he was first required to present his claim to the Army Claims Service before he could prosecute the action in the Court of Claims. This administrative procedure, he points out, was not exhausted until June 21, 1948, and this suit was filed on April 26, 1951, less than three years thereafter. But, if he should fail with this contention, he argues that the war suspended the running of the statute and it was, therefore, tolled until September 2, 1945, when hostilities ceased with Japan. We cannot agree with either contention.

It has been settled since *Kendall* v. *United States,* 107 U. S. 123 (1883), that the Congress in creating the Court of Claims restricted that court's jurisdiction. In *Kendall* this Court held that the Congress in the Act creating the Court of Claims gave the Government's consent to be sued therein only in certain classes of claims and that no others might be asserted against it, including "claims which are declared barred if not asserted within the time limited by the statute." *Id.,* at 125. As to the latter cases, jurisdiction was given only over those filed "within six years after such claim *first* accrues," unless the claimant was "under legal disability or beyond the seas at the time the claim accrues," in which event suit must "be filed within three years after the disability ceases." 62 Stat. 976, 28 U. S. C. § 2501. As was said in *Kendall, supra,* "The court cannot superadd to those enumerated . . . ," it having "no more authority to engraft [another] dis-

ability upon the statute than a disability arising from sickness, surprise, or inevitable accident, which might prevent a claimant from suing within the time prescribed." *Id.*, at 125.

Petitioner asserts that his action did not accrue until the denial of the claim by the Army Claims Service. At the same time, he admits that the claim filed there was based on the alleged delivery of supplies, etc., on the promise of future payment. The claim, if allowed, was against the Philippine Government, not the United States.[5] The claim asserted in this proceeding, on the contrary, is against the United States and based on the alleged taking of property without just compensation in violation of the Fifth Amendment. Petitioner would have us hold that this just compensation case could not be filed until after an administrative denial of his claim filed with the Army Claims Service. But, even if the claims were laid on the same theory and each was directed against the United States, Congress has made no such requirement. It has not so restricted the jurisdiction of

---

[5] On August 6, 1945, the functions of the Army Claims Service, which had been established in April 1945, were extended to include consideration of certain types of guerrilla claims, such as claims of civilians for compensation for supplies delivered to the guerrillas during the Japanese occupation, provided "there was a clear understanding at the time the supplies and equipment or services were purchased or contracted for that payment would eventually be made." See the order of General MacArthur to the Commanding General, U. S. Armed Forces, Western Pacific, dated August 6, 1945. Such claims were actually asserted against the Philippine Government and, if and when approved by the Claims Service, were paid by that Government. In 1946, Congress advanced $200,000,000 for the expenses of the Army of the Philippines, 60 Stat. 14, and at various other times during the war similar special appropriations were made. From such appropriations the Philippine Government paid whatever claims were found valid. For further discussion of the operation of the Army Claims Service in the Philippines, see *Victorio v. United States*, 91 F. Supp. 748 (1950).

the Court of Claims.[6]  Under the circumstances, for us to say that the exhaustion of administrative remedies in such case is a prerequisite to the jurisdiction of the Court of Claims would but "engraft [another] disability upon the statute" and thus frustrate the purpose of Congress. Furthermore, it would be a limitless extension of the period of limitation that Congress expressly provided for the prosecution of claims against the Government in the Court of Claims.  This we cannot do.

We now reach petitioner's second contention.  The cause of action as alleged by petitioner was for just compensation for supplies, etc., taken from him by guerrillas during the Japanese occupation of the Philippines.  He alleges in his complaint that the action, if any he has, accrued at the time of the taking and could only be maintained within six years thereafter but for the existence of the hostilities which he claims tolled the statute.  He depends on *Hanger* v. *Abbott,* 6 Wall. 532 (1868), to support this position.  Such reliance is misplaced.  That case involved private citizens, not the Government.  It has no applicability to claims against the sovereign. See *Haycraft* v. *United States,* 22 Wall. 81 (1875).

To permit the application of the doctrine urged by petitioner would impose the tolling of the statute in every time-limit-consent Act passed by the Congress.  For example, statutes permitting suits for tax refunds, tort actions, alien property litigation, patent cases, and other claims against the Government would all be affected. Strangely enough, Congress would be required to provide expressly in each statute that the period of limitation was

---

[6] While the Court of Claims held in *Dino* v. *United States,* 119 Ct. Cl. 307 (1951), that a claim similar to the one here involved should first be asserted in the appropriate administrative agency, this rule has now been abandoned by that court.  See, *e. g.,* the discussion in *Tan* v. *United States,* 122 Ct. Cl. 662, 102 F. Supp. 552 (1952), and the cases there cited.

not to be extended by war. But Congress was entitled to assume that the limitation period it prescribed meant just that period and no more. With this intent in mind, Congress has passed specific legislation each time it has seen fit to toll such statutes of limitations because of war.[7] And this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied. *United States* v. *Sherwood,* 312 U. S. 584, 590–591 (1941), and cases there cited. Furthermore, even if hostilities prevented petitioner from filing his claim and this condition could be regarded as creating a "disability," the claim would nonetheless be barred by the express terms of this statute because not filed within three years after the cessation of hostilities, to wit, before September 2, 1948. Likewise, if petitioner claimed such a disability under the Trading with the Enemy Act,[8] he would not better his position, for timely action was necessary by the

---

[7] Congress specifically tolled the statute of limitations for some actions against the Government during the Second World War, *e. g.,* Soldiers' and Sailors' Civil Relief Act, 54 Stat. 1181, 50 U. S. C. App. § 525, providing for suspension of limitations in suits by or against servicemen; and § 34 of the Trading with the Enemy Act, 60 Stat. 925–926, 50 U. S. C. App. § 34 (a), suspending limitations in suits against the Alien Property Custodian respecting vested property. However, the statute of limitations has not been enlarged by Congress for claims such as petitioner's.

[8] 40 Stat. 411, 50 U. S. C. App. § 2:

"That the word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory."

same date. The same is true of any claim under the disability specifically provided for "persons beyond the seas," [9] even if this provision were applicable to petitioner. Such applicability has not been urged and we do not pass upon it.

We are not unmindful that the enforcement of this rule might result in hardship in some cases, and perhaps frustrate the expectations of some Philippine citizens who in good faith supplied recognized guerrilla units. Such considerations are not for us, as this Court can enforce relief against the sovereign only within the limits established by Congress. Petitioner here had six years within which to act. He filed no claim whatever until after the expiration of three years from the date he alleges the last taking occurred. This claim was filed with the Army Claims Service on the basis of an alleged contract. That claim was denied within less than three months after it was filed. This left petitioner over two and a half years additional time to pursue his just compensation remedy. Still he did nothing for almost three years, when he filed this suit in the Court of Claims. By that time his claim, on any theory, was barred by statute. The judgment is therefore

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE FRANKFURTER concur, dissenting.

If petitioner had sued in the Court of Claims without first presenting his claim to the Army Claims Service, I

---

[9] The present saving clause (see note 1, *supra*) was enacted in 1948. However, the pre-1948 statute, 36 Stat. 1139, 28 U. S. C. (1940 ed.) § 262, also had a saving clause which contained as a specific disability "persons beyond the seas at the time the claim accrued." The 1948 amendment merely substituted the general saving clause for the prior clause which specifically set forth various disabilities.

think the Court of Claims would have been warranted in dismissing it. The Army Claims Service was established April 7, 1945, by General Douglas MacArthur to process claims such as this one. The Army Claims Service questioned whether expenses incurred by guerrilla organizations could be paid out of the appropriated funds. On August 6, 1945, General MacArthur advised the Army Claims Service that it could authorize the payment of claims such as this one. That directive stated:

> ". . . The United States Army will assume the responsibility for paying certain claims arising out of activities of guerrilla forces in the Philippines. That responsibility will be limited to claims for the value of goods or services essential for carrying on operations against the enemy.

> ". . . No payments will be made on claims arising out of activities of other than recognized guerrilla forces.

> .　　.　　.　　.　　.

> ". . . Such claims will be paid from the appropriation, 'Expenses, Army of the Philippines'.

> ". . . Payment will be made only on claims where there was a clear understanding at the time the supplies and equipment or services were purchased or contracted for that payment would eventually be made. There must have been a clear intention on the part of the guerrilla commander and of the vendor or employee that an obligation was being created. It must be definitely shown that the provision of such supplies, equipment or services was not intended as a patriotic donation to the common cause against the enemy. It must also be definitely shown that the supplies, equipment or services were essential for the operation of the guerrilla forces."

That directive was issued in accordance with the Act of July 3, 1945, 59 Stat. 401–402, which appropriated money for "all expenses necessary for the mobilization, operation, and maintenance of the Army of the Philippines." The expenditure and accounting were to be in the manner prescribed by the President. *Id.*, at 402. And the moneys were to be available to the Philippine Government "as authorized by the Commanding General, United States Army Forces in the Far East." *Id.*, at 402. The Government's brief advises us that nearly $300,-000,000 was appropriated by the Congress for that purpose through July 3, 1945. And on February 18, 1946, $200,-000,000 more was added to that appropriation. 60 Stat. 14.

The statutory scheme for payment of the expenses of the guerrilla forces, therefore, demonstrates that this claim, if it can be sustained on the merits, runs against the United States. The fact that approved claims were paid by the Philippine Government is a mere administrative detail. For it acted in this respect only as a disbursing agency for the United States.

Hence petitioner properly first presented his claim to the Army Claims Service, which rejected it June 21, 1948. The six-year statute should be held to run from that date. For it is the general rule that, where a claim must first be processed by an administrative agency, it does not accrue until the agency refuses payment. See *United States* v. *Taylor,* 104 U. S. 216, 222. Cf. *United States* v. *Clark,* 96 U. S. 37, 43–44.

That was the view of the Court of Claims in an earlier case involving such a problem. See *Dino* v. *United States,* 119 Ct. Cl. 307. I think the Court of Claims position in the *Dino* case is the correct one.