**Robert G. PEREIRA, Plaintiff,**

v.

**Donna SHALALA, M.D., Secretary of Health and Human Services, Defendant.**

**No. CV 93–2347–EE.**

United States District Court,
C.D. California.

Dec. 14, 1993.

Robert G. Pereira, pro se.

Jan L. Luymes, Asst. U.S. Atty., Los Angeles, CA, for defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

EDWARDS, United States Magistrate Judge.

*Proceedings.*

Plaintiff filed the complaint herein on April 22, 1993. He alleges that the Secretary of Health and Human Services erred in denying plaintiff disability benefits, specifically, Supplemental Security Income ("SSI") benefits. The defendant filed a motion to dismiss the action under Rule 12(b)(1), F.R.Civ.P., on September 1, 1993. The motion contends that this court lacks subject matter jurisdiction over the action. The parties filed written consent to proceed before a United States Magistrate Judge on May 28, 1993.

*Proceedings Before the Social Security Administration.*

Plaintiff originally filed an application for benefits on April 23, 1990, alleging disability due to injuries sustained in a motorcycle accident. After being denied benefits, he requested and received a hearing before an Administrative Law Judge of the Office of Hearings and Appeals, Social Security Administration, Department of Health and Human Services ("ALJ"). The ALJ found that plaintiff was entitled to a period of disability from April 19, 1989, to March 22, 1991. (defendant's motion to dismiss, p. 13.) Although the complaint alleges that plaintiff is still disabled, he narrowed his position in his motion to dismiss, claiming disability through December, 1992. (plaintiff's memorandum in support of motion, etc., p. 2.)

Because the entire record of administrative proceedings has not been filed, it is unknown what the entire record would show. However, the undisputed facts, as evidenced by the exhibits in support of defendant's motion, show that at least the following occurred:

The ALJ issued and mailed to the plaintiff a decision on April 23, 1991, granting him benefits for the period April 19, 1989, through March 22, 1991. (defendant's motion, pp. 12–16.) Plaintiff was advised that he had 60 days to request a review of the ALJ's decision by the Appeals Council of the Office of Hearings and Appeals. (defendant's motion, p. 12.) On August 28, 1991, plaintiff submitted a request for review. (defendant's motion, pp. 17–18.) Over 7 months later, on April 7, 1992, the Office of Hearings and Appeals responded to plaintiff's request.

It told plaintiff that he had not made the request within the 60–day period after the ALJ's decision. However, it offered him a chance to submit a statement showing good cause why he filed his request late. (defendant's motion, p. 17.)

Plaintiff responded on April 9, 1992, stating that he was late because his representative neglected to request "reconsideration" and that he then did it himself. (defendant's motion, p. 19.) On May 8, 1992, the Appeals Council found that plaintiff had not shown good cause for failing to request review within the 60–day period, so it dismissed his request for review. (defendant's motion, pp. 25–26.) Plaintiff continued to request review, sending in a second request on August 7, 1992, and a third request on January 23, 1993. The requests were treated as void by the Social Security Administration. (defendant's motion, p. 27.)

Meanwhile, another department of the Social Security Administration had also been sending plaintiff correspondence. On June 16, 1991, the Office of Disability and International Operations sent plaintiff a letter stating *that he would begin receiving payments in June, 1991.* The first check was to be for $515. (defendant's motion, pp. 36–39.) Just 14 days later, on June 30, 1991, that office wrote to plaintiff again. This time it told him *that he was no longer qualified for disability benefits beginning, amazingly, June, 1991.* (defendant's motion, pp. 32–33.)

Four days later, on July 4, 1991, the Office of Disability and International Operations wrote to plaintiff still again. This time it told him that he would "soon" receive a check for $1,989.98. (defendant's motion pp. 34–35.)

The letter dated June 16, 1991, told plaintiff that he had 60 days from the receipt of that letter to "request reconsideration." The June 30, 1991, letter told plaintiff that he had 60 days from the receipt of that letter to "appeal." The July 4 letter also told him that he had 60 days to "appeal." On October 6, 1991, the Office of Disability and International Operations sent plaintiff another letter. Like the July 4 letter, this one stated that he would "soon" receive a check for $1,989.98 and told him that he had 60 days from receipt of that letter to appeal. (defendant's

motion, p. 41–42.) Each of the letters advised plaintiff of an 800 number he could call if he had any questions. Each letter also advised him that he could get in touch with his local Social Security District Office, by writing or visiting it, to have questions answered. From June, 1991, to January, 1993, plaintiff made over 30 phone calls and kept a log to clarify or attempt to understand what was going on. (defendant's motion, p. 49–51.)

Finally, as noted above, on April 22, 1993, plaintiff commenced this action.

*Discussion.*

Plaintiff's motion for summary judgment assumes that this court has subject matter jurisdiction. Defendant's motion to dismiss under Rule 12(b)(1), F.R.Civ.P., argues that this court lacks such jurisdiction. Accordingly, the court must first decide whether it has subject matter jurisdiction, and, if not, dismiss the action. *Jones v. Brush,* 143 F.2d 733 (9th Cir.1944).

On the surface, the Secretary's position is unassailable: the ALJ rendered his decision on April 23, 1991, and a copy was sent to plaintiff the same day. More than 60 days later, on August 28, 1991, plaintiff filed his first request for review. Thereafter, on April 22, 1993, plaintiff filed the complaint herein.

It is well settled that this court lacks subject matter jurisdiction in any case in which an agency of the United States is sued, unless the party suing shows that the United States unequivocally waived sovereign immunity by consenting to be sued. *Holloman v. Watt,* 708 F.2d, 1399, 1401 (9th Cir.1983). This court's jurisdiction is thus defined by the terms of the government's consent to be sued. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Moreover, any limitations or conditions upon which the United States has consented to be sued also limit the scope of the waiver of sovereign immunity. *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

In Social Security cases, Congress has defined only one route of review for SSI claims, namely, that prescribed by 42 U.S.C.

§ 405(g) and (h), and 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides in pertinent part that:

> "Any individual, after any final decision of the Secretary made after a hearing . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow . . ."

Defendant Secretary appears to argue at some length that plaintiff never did obtain a "final decision" of the Secretary, because he did not follow the procedures in Social Security Administration regulations. Specifically, those procedures require a claimant to request review by the Appeals Council of the Office of Hearings and Appeals within 60 days of receiving notice of the ALJ's decision. 20 C.F.R. § 404.968(a), 20 C.F.R. § 416.1468(a). If that is the Secretary's position, it is inconsistent with the "Order of Appeals Council" mailed to plaintiff on May 8, 1992. That paper specifically advised plaintiff that the ALJ's decision of April 23, 1991, was "the final decision of the Secretary." (defendant's motion, pp. 25–26.) The ALJ advised plaintiff to the same effect. (defendant's motion, pp. 55–56.)

Nonetheless, if plaintiff did not timely request review of the ALJ's decision by the Appeals Council, he failed to exhaust his administrative remedies, and this court has no jurisdiction to review the ALJ's decision. *Matlock v. Sullivan,* 908 F.2d 492, 493 (9th Cir.1990).

The only exception to the rule barring judicial review of a late filed appeal is when the claimant is excused for his failure under the doctrine of equitable tolling. *Bowen v. City of New York,* 476 U.S. 467, 480, 106 S.Ct. 2022, 2030, 90 L.Ed.2d 462 (1986). Equitable tolling applies if the Secretary's own conduct caused plaintiff to file late. Thus, it consists of 2 elements: there must be conduct by the Social Security Administration that is inequitable, and the conduct must have caused the plaintiff's failure to timely pursue his claim.

As noted above, the Administration's barrage of correspondence to the plaintiff suggested even as late as July 4, 1991, that plaintiff still had 60 days to appeal from the decision in his case. Since plaintiff did file a request for review on August 28, 1991, his reliance on the 60–day period starting to run on July 4, 1991, would have justified the filing of his request in August.

It was not, however, simply the statements in the various letters advising plaintiff of the times to appeal or request review that rendered them subject to misinterpretation. The letters, apparently computer-generated, would be nearly incomprehensible even to a Social Security specialist.[1] A review of the letter of June 16, 1991, from the Administration to plaintiff illustrates the near-incomprehensibility of the communication. The first 2 pages of the 5 page letter include the following:

> "We are writing to let you know that you are entitled to monthly disability benefits from Social Security beginning October 1989.
>
> The amount of your first check is $515.00.
>
> Your representative must obtain authorization from the Social Security Administration before a fee may be charged. If the representative intends to charge a fee, a petition requesting fee approval should be submitted immediately.
>
> If no fee is to be charged, the Administration should be notified.
>
> We are paying you beginning June 1991.
>
> Shortly after July 03, 1991 you will receive *your first check which will include benefits due you for June 1991. After that, a check for $515 will be sent each month.*
>
> We have not determined the amount of the Social Security benefits you are due for 10/89 through 05/91. These benefits must be reduced if you get Supplemental Security Income benefits for those months. If

---

1. Internal handwritten correspondence among Social Security Administration employees reflected considerable confusion even by them as to the propriety of plaintiff's appeal. (defendant's motion, pp. 21–24.) One memo noted that there appeared to be "timely filing." The others indicated that it was not known which department of the Social Security Administration plaintiff's appeal should be addressed to. (defendant's motion, pp. 22–24.)

you do not get Supplemental Security Income benefits for those months, your past due benefits will not be reduced.

After we decide how much your past due benefits should be, we will send you another notice and any benefits you are due.

Your monthly benefits will be sent to the financial institution you have selected. Please notify us if you change your mailing address so we can send notices directly to you.

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums and worker's compensation offset. We must also round down to the nearest dollar.

| Beginning Date | Benefit Amount | Reason |
| --- | --- | --- |
| October 1989 | $467.00 | Entitlement began |
| December 1989 | $488.90 | Cost–of–Living adjustment |
| December 1990 | $515.30 | Cost–of–Living adjustment |

We are sending a copy of this notice to the administrative law judge and FRAN HARTE.

We may have to change the amount of your disability benefits when we receive proof of the amount of your workers' compensation or other disability payments.

We have now completed our consideration of your claim. We previously sent you a notice that you meet the medical requirements for disability benefits. This notice tells you whether you meet the nonmedical requirements. Together, they explain the determination made in your claim.

It has been determined that you were under a disability beginning April 1989 and ending April 1991 when you were found no longer disabled within the meaning of the law. The first month for which benefits are payable to you is October 1989. Since benefits are paid for the month disability ends and the following 2 months, *your benefits end with June 1991*. If your condition again prevents you from doing substantial gainful work before you reach 65, you may file a new application for disability benefits. For additional information on how you can receive reduced retirement benefits at 62, you should get in touch with your Social Security office.

Your Social Security disability benefits can be withheld or reduced until you are age 65 because you are receiving workers' compensation and/or another payment because of disability. However, you may be eligible for retirement benefits as early as age 62. Contact any Social Security office to apply for these benefits no earlier than 3 months before the month you want to receive retirement benefits.

Benefits are adjusted beginning with the first month that a disabled worker is entitled to Social Security disability benefits and workers' compensation and/or another payment because of disability. Therefore, your benefits beginning October 1989 are reduced.

The law requires that your disability insurance benefits be reduced because you receive workers' compensation and/or another payment because of disability. This determination is based on a weekly workers' compensation and/or another payment because of disability of $100.27.

*Your benefit will be $213.30 beginning October 1989.* (Emphasis added.)

(defendant's motion, pp. 36–37.)

Plaintiff was thus told on the one hand that he would receive a check for $515 every month beginning in June, 1991, and thereafter. And he was then told, buried in a distant paragraph, that his benefits would end that same month—June, 1991. He was also told that the Administration did not know how much his benefits should be until it knew whether he was receiving workers' compensation benefits, and then it proceeded in another distant paragraph to tell him that the Administration did know that he did receive workers' compensation benefits and that they were $100.27 per week. Finally, he was told that his benefit "will be $213.30 beginning October 1989" (a date long past).

In addition to the nearly incomprehensible statements in the letter, the sentence structure and word usage themselves placed a substantial barrier to understanding. The court has analyzed the quoted portion of the letter above using accepted, well-known tests, with the following results: [2]

Flesch–Kincaid level: 13 ("Difficult for most readers.")

Flesch Reading Ease: 36 ("Difficult.")

Gunning's Fog Index: 15 ("Vocabulary may be too advanced for most readers.")

The above letter of June 16, 1991 (which was not even the most difficult of the correspondence mailed to the plaintiff), was addressed to readers having at least a college education. Yet, the ALJ was fully aware that plaintiff had only a 12th grade education. (defendant's motion, p. 13.) Also, any examination of plaintiff's correspondence should have made it apparent that he had limited communication skills. (*See,* e.g., defendant's motion, pp. 29–31.)

In brief, the correspondence from the Social Security Administration to plaintiff was such as to be likely to confuse and deceive a reasonable claimant. It was foreseeable that a claimant in plaintiff's position would have been unsure not only of the meaning of the decision that he might appeal from, but also unsure of when and to whom he must make such an appeal.

However, as egregious as the defects in the Administration's correspondence were, plaintiff does not show that the defects caused his late pursuit of his claim. His failure to file a request for review within 60 days of the April 23, 1991, decision of the ALJ was not caused by the incoherence of the Secretary's communications. Rather, plaintiff stated to the Appeals Council that the representative who had helped him in proceedings before the ALJ had declined to continue to handle his claim. Consequently, plaintiff had filed the request for review himself. (defendant's motion, pp. 19, 29, 33, and 61.) Plaintiff failed to elaborate on this reason for late filing even after the Administrative Appeals judge advised him that his

showing was insufficient. (defendant's motion, p. 60.)

Even assuming plaintiff could have shown good cause for his failure to seek timely review from the Appeals Council, he still could not prevail here. There is no question but that he was clearly told that he had a final decision from the Secretary on December 24, 1992. (defendant's motion, pp. 55–56.) His commencement of this action in April, 1993, was clearly beyond the time permitted by law. 42 U.S.C. § 405(g). Accordingly, although the Social Security Administration's correspondence was of a nature that it could have misled plaintiff, it was not the *cause* of his late pursuit of his claim. For that reason, the doctrine of equitable tolling does not apply. Plaintiff's late request for review to the Appeals Council and his late filing of the complaint herein were thus unjustified. Accordingly, this court is without subject matter jurisdiction.

For the foregoing reasons, defendant's motion to dismiss this action under Rule 12(b)(1), F.R.Civ.P., is granted. Judgment will be entered accordingly.

---

**2.** The analysis was made using the Grammatik ® program in WordPerfect 6.0.®