James D. ADELMAN, Plaintiff,

v.

DISCOVER CARD SERVICES, INC., a Delaware Corporation; Alan Steven Curtis; United States of America; and John Doe, Defendants.

No. 2:95CV–0089W.

United States District Court,
D. Utah,
Central Division.

Feb. 21, 1996.

Jeffrey A. McKee, Susemihl & Davis, P.C., Phoenix, AZ, for Plaintiff.

Jill N. Parrish, Assistant United States Attorney, Salt Lake City, UT, for Defendant United States of America.

MEMORANDUM DECISION AND OR-
DER GRANTING DEFENDANT THE
UNITED STATES OF AMERICA'S
MOTION TO DISMISS

WINDER, Chief Judge.

This matter is before the court on Defendant the United States of America's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) which was argued on February 7, 1996. At the hearing, Plaintiff James D. Adelman ("Plaintiff") was represented by Jeffery A. McKee and Defendant the United States ("Defendant" or "United States") was represented by Jill N. Parrish. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to Defendant's motion. Now being fully advised, the court enters the following memorandum decision and order.

## I. BACKGROUND

Alan Curtis ("Curtis") is employed by a Utah State Agency known as the Disability Determination Services ("DDS") and is the former spouse of Plaintiff's current spouse, Rebecca Adelman. Pursuant to a federal program, DDS evaluates claims of disability of Utah residents for the United States Social Security Administration ("SSA"). For this function, DDS employees have access to individuals' confidential social security and tax information.

Plaintiff alleges that Curtis wrongfully accessed Plaintiff's confidential social security and tax records while working at DDS. Plaintiff also alleges that Curtis wrongfully published to family members and business associates negative information regarding Plaintiff's credit, tax reporting, and social security history. According to Plaintiff, Curtis's conduct caused him substantial personal and professional harm. Plaintiff and Curtis have settled Plaintiff's causes of action against Curtis individually.

Based on the relationship between DDS and SSA, Plaintiff also sued the United States, alleging that the United States is liable for Curtis's actions under the tax code, 26 U.S.C. § 6103; and the Privacy Act, 5 U.S.C. § 552a. The federal law governing the DDS–SSA relationship establish procedures to be followed and standards to be met. See 42 U.S.C. § 421; 20 C.F.R. § 404.1601 et seq. The SSA has promulgated additional procedures and standards through the Program Operating System Manual ("POMS"). Plaintiff also asserts that DDS exists solely for the purpose of administrating a federal benefits program and that the federal government provides all of the funding for DDS's operation.

The United States filed a motion to dismiss for lack of jurisdiction, claiming that Curtis is a state employee and the United States has not waived sovereign immunity for disclosures of tax and social security information made by state employees.

## II. DISCUSSION

### A. Sovereign Immunity in General

■■■ "Under the doctrine of sovereign immunity, the United States cannot be sued unless it consents to be sued and such consent must be unequivocal." Bowman v. United States, 65 F.3d 856, 857 (10th Cir. 1995). Statutes waiving sovereign immunity must be "strictly construed in favor of the United States," Ardestani v. Immigration and Naturalization Service, 502 U.S. 129, 137, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991), and exceptions are not to be implied, Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

### B. The Tax Code

Plaintiff argues that the United States is liable for Curtis's actions under 26 U.S.C. § 6103 of the tax code, which forbids disclosure of tax returns or return information. Plaintiff cites 26 U.S.C. § 7431 as the statute waiving sovereign immunity and granting this court jurisdiction over his case against the United States. Section 7431 states:

(1) Disclosure by employee of United States.—If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for

damages against the United States in a district court of the United States.

Section 7431(a)(1) is clear: it waives sovereign immunity for disclosures of returns or return information only when an "officer or employee of the United States" makes that disclosure. The statute does not define "employee of the United States."

■ This court holds that Curtis is not an "employee of the United States." First, a strict construction of that term would exclude employees of state agencies working as independent contractors. In fact, Congress made distinctions in the tax code between "employees of the United States" and employees of state agencies administering federal programs. *See* 26 U.S.C. § 6103. Because Congress saw a distinction, it cannot be said that Congress made an unequivocal waiver of sovereign immunity in § 7431 for actions of state employees administering federal programs.

Second, this court rejects Plaintiff's argument that Curtis is an "employee of the United States" because the federal regulatory control over DDS transforms DDS into a federal agency for purposes of § 7431. This court finds that DDS is a state agency working as an independent contractor to administer a federal program, not a federal agency. To make this determination, the court relies on a similar analysis under the Federal Tort Claims Act ("FTCA").

In the FTCA context, the Supreme Court has stated that "[a] critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1975) (quoting *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219-20, 37 L.Ed.2d 121 (1973)). "[E]xtensive, detailed and virtually day-to-day supervision" by the federal government is needed before "agency" status can be said to attach. *Forsham v. Harris,* 445 U.S. 169, 180, 100 S.Ct. 977, 984, 63 L.Ed.2d 293 (1980).

In *Orleans,* the state agency involved received 100% of its funding from the federal government, conducted only programs formulated and funded by the federal government, and was subject to close supervision by the federal government in its activities. *Id.* at 811, 96 S.Ct. at 1974. Despite these federal controls, the *Orleans* Court determined that the state agency was not transformed into a federal agency and thus the employees of the agency were not employees of the federal government. *Id.* at 816, 96 S.Ct. at 1977. According to the Court, the determinative question was "not whether the [state agency] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815, 96 S.Ct. at 1976; *see also Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973) (holding that employees of county jail that housed federal prisoners pursuant to contract with the federal government were not federal employees even though county jail had to comply with federal rules and regulations).

Under this analysis, DDS is an independent contractor; therefore Curtis is not an "employee of the United States" under § 7431(a)(1). Although the federal law concerning the DDS–SSA relationship dictates the results to be accomplished by DDS, mandates certain levels of performance, and requires compliance with certain procedures and regulations, it does not supervise the detailed physical performance of DDS employees nor DDS's day-to-day operations.[1] The regulations defining the parameters of the DDS–SSA relationship provide: "[The SSA] will provide program standards, leadership, and oversight. We do not intend to become involved in the State's ongoing management of the program except as is necessary in accordance with these regulations. The state will comply with our regulations and other written guidelines." 20 C.F.R. § 404.1603(a). The regulations also provide that it is the *state's* responsibility to "provide

---

1. Plaintiff admits in his complaint that "DDS personnel handle the day-to-day operations." Additionally, the DDS Administrator and another supervisor both testified in their depositions that no federal agency or employee exercises any day-to-day control or supervision over any DDS employees or operations.

management" and "qualified personnel." *Id.* § 404.1603(b). In addition, if the procedures or standards are not met, the authority of the federal government is limited to terminating its relationship with the state agency and make disability determinations itself. 42 U.S.C. § 421(b)(1). The SSA does not have the authority to reprimand or terminate employees or to change day-to-day operations to ensure compliance with the regulations.

In sum, a strict construction of "employee of the United States" cannot include employees of state agencies administering a federal program. Moreover, because the court finds that DDS is an independent contractor, not a federal agency, this court finds no justification to transform Curtis into an "employee of the United States." *Cf. St. Michael's Convalescent Hosp. v. California,* 643 F.2d 1369, 1374 (9th Cir.1981) (refusing to transform employees of a state program into federal employees). Accordingly, Plaintiff's cause of action based on § 6103 of the tax code is dismissed.

### C. *The Privacy Act*

Plaintiff also argues that the United States is liable for Curtis's actions under the Privacy Act, 5 U.S.C. § 552a, presumably under subsection (b) which precludes agencies from disclosing a person's confidential records absent one of the listed exceptions. The Privacy Act contains the following limited waiver of sovereign immunity:

> Whenever any agency ... (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1).

Sovereign immunity is waived only for violations of the Privacy Act committed by an "agency." The Privacy Act adopts the definition of "agency" contained in the Freedom of Information Act, 5 U.S.C. § 552:

> [T]he term 'agency' as defined in section 551(1) of this title includes any executive department, military department, Govern-

ment corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

*Id.* § 552(f) (Supp.1995). Section 551 in turn defines agency as "each authority of the Government of the United States." 5 U.S.C. § 551(1) (Supp.1995).

Accordingly, this court holds that the Privacy Act's waiver of sovereign immunity extends only to federal agencies and does not include state agencies. This is consistent with prior case law. *See St. Michael's Convalescent Hosp. v. California,* 643 F.2d 1369, 1373 (9th Cir.1981) (concluding that the definition of "agency" under the Privacy Act "does not encompass state agencies or bodies"). Furthermore, to the extent that Plaintiff argues that the federal regulatory control over DDS transforms DDS into a federal agency for purposes of the Privacy Act, this court holds that it does not for the same reasons stated in Part B of this opinion (discussing 26 U.S.C. § 7431).

At oral argument, Plaintiff claimed that, even if DDS is not an "agency" within the meaning of the Privacy Act, sovereign immunity is waived through the POMS. Rule number 30501.035(B)(1) of the POMS states that "[i]n the event of an alleged violation of the Privacy Act, a civil action may be brought against [Health and Human Services] when the alleged violation concerns the operation of a system of records to accomplish an HHS function." Plaintiff asserts that because DDS operates a "system of records to accomplish an HHS function," that he may maintain a suit under the Privacy Act.

This court disagrees. The concept behind sovereign immunity is that no action can be maintained against the United States "unless the legislature has authorized it." *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). Because Congress has not agreed to be sued for violations of the Privacy Act by state employees, Plaintiff's cause of action must be dismissed.

## III. ORDER

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that Defendant the United States of America's Motion to Dismiss is GRANTED.