**Arthur N. BRAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–376C.**

United States Court of Federal Claims.

Feb. 16, 2001.

---

Arthur N. Bray, Ft. Leavenworth, Kansas, pro se.

James H. Holl, III, with whom were Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, Washington, D.C., for defendant. Major Karen L. Tibbals, United States Air Force, of counsel.

## ORDER

ANDEWELT, Judge.

In this military pay action, plaintiff Arthur N. Bray, appearing pro se, seeks to recover losses he allegedly suffered as a result of the United States Air Force erroneously withholding plaintiff's pay from the time he was court-martialed up through the time a convening body approved his sentence. This action is before the court on defendant's motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendant's motion is granted in part and suspended in part.

### I.

The material facts are not in dispute. While serving as an Air Force Master Sergeant, plaintiff was convicted by a general court-martial of a series of crimes related to the kidnaping of a five-year old girl. Plaintiff was sentenced to a dishonorable discharge, confinement for thirty-seven years, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. Approximately three months after sentencing, pursuant to a pretrial agreement, a convening authority approved the court-martial sentence but reduced the period of confinement to thirty years. Upon review, the Court of Appeals for the Armed Forces concluded that the forfeiture of plaintiff's pay and allowances between the date of his sentence and the date of the convening board's approval of his sentence violated the *ex post facto* clause of the Constitution. Accordingly, the Court of Appeals ordered the Air Force to turn over to plaintiff the pay and allowances withheld during this period.

Thereafter, plaintiff filed the instant action. In his complaint, plaintiff alleges that "[a]s a direct and proximate cause of the defendants [sic] erroneous withholding of pay," plaintiff (1) was forced to sell his home at a $14,000 loss, (2) had his car repossessed and sold at auction, and (3) lost the ability to rent his home during the time of his incarceration. The complaint seeks a total of $509,000 plus interest and costs. In response to the complaint, defendant filed the instant motion to dismiss, alleging that each monetary claim presented by plaintiff either falls outside this court's jurisdiction (R.C.F.C. 12(b)(1)) or is one upon which relief cannot be granted (R.C.F.C. 12(b)(4)). In support of its motion, defendant presents a declaration by an Air Force Accounts Reconstruction Specialist stating that the pay and allowances that the Court of Appeals concluded were improperly withheld from plaintiff amounted to $5,084.75, and that this amount had been paid to plaintiff in compliance with the court's order. In his response to defendant's motion, plaintiff specifies for the first time that he seeks $35,000 in damages for mental stress and hardship allegedly caused by the Air Force's withholding of plaintiff's pay, and compensation for damage to plaintiff's car when the Air Force towed the car to the impound lot. Additionally, plaintiff alleges that he received only $3300 of the $5,084.75 owed to him in back pay. It

is unclear whether these newly specified damages fall within or are in addition to the $509,000 sought in the complaint.

## II.

The analysis of defendant's motion to dismiss begins with the Supreme Court's discussion of the doctrine of sovereign immunity and the scope of this court's jurisdiction in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan,* the Supreme Court explained the doctrine of sovereign immunity as follows:

It long has been established ... that the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. [584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ]. And it has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. [1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ]; *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Thus, except as Congress has consented to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." [*Sherwood,* 312 U.S. at 587–88, 61 S.Ct. 767.]

*Testan,* 424 U.S. at 399, 96 S.Ct. 948. The Tucker Act, 28 U.S.C. § 1491 (2000), establishes the scope of this court's jurisdiction as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*Id.* at § 1491(a)(1). With respect to the scope of this court's jurisdiction under the Tucker Act, the *Testan* Court explained:

"The Tucker Act ... is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. [T]he [Tucker] Act merely confers jurisdiction upon it whenever the substantive right exists." *Testan,* 424 U.S. at 398, 96 S.Ct. 948 (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007–09 (1967)).

■ Hence, when a party seeks to secure monetary damages from the United States under the Tucker Act, the party must establish a waiver of sovereign immunity which creates a substantive right enforceable against the United States. For damage suits under the Tucker Act based on the Constitution, a federal statute, or a federal regulation, to establish the requisite substantive right, the party must point to a constitutional, statutory, or regulatory provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 400, 96 S.Ct. 948 (quoting *Eastport,* 372 F.2d at 1009).

When evaluating a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the ultimate burden of establishing subject matter jurisdiction over his or her claims. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). Further, the court must construe the facts in the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and in so doing, must accept any undisputed allegations of fact as true, *Reynolds,* 846 F.2d at 747. The court need not accept the plaintiff's characterization of the complaint; instead, the court should look to the plaintiff's factual allegations to ascertain the true nature of the claims. *Smithson v. United States,* 847 F.2d 791, 794 (Fed.Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

## III.

■ The Tucker Act specifies that this court's jurisdiction does not encompass cases "sounding in tort." 28 U.S.C. § 1491(a)(1). As articulated by plaintiff, all but one of his claims appear to sound in tort. Plaintiff's effort to secure compensation for damage to his car is a garden variety negligence tort

claim. Similarly, plaintiff's claim for consequential damages that were allegedly the result of the Air Force's erroneous withholding of plaintiff's pay uses language that is characteristic of a negligence tort claim ("direct and proximate cause"). Based on the language used in the complaint, the only allegation that does not appear to sound in tort is plaintiff's claim that he received only $3300 of the $5,084.75 in back pay that defendant acknowledged it owed plaintiff.

Because plaintiff appears pro se and apparently is not trained in the law or in drafting legal documents, the court will look beyond the language used in the complaint. The court will instead focus on the underlying facts disclosed in the complaint so as to determine whether Congress has waived sovereign immunity and placed jurisdiction in this court over any claim based on those facts.

This court's jurisdiction under the Tucker Act includes express and implied contracts. However, none of plaintiff's claims suggest the existence of any contract between plaintiff and the Air Force that could support jurisdiction in this court. Indeed, the relationship between military personnel and the United States generally is defined by statutes and regulations and not the law of contracts. *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961).

In the absence of an express or implied contract, this court's Tucker Act jurisdiction extends only to such constitutional, statutory, and regulatory provisions that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport*, 372 F.2d at 1009). There is no constitutional provision that supports the instant claims, and the court's research has not uncovered any federal statute or regulation that waives sovereign immunity and places jurisdiction in this court over any claim based on the facts alleged in the complaint, except, possibly, with respect to plaintiff's claim for back pay.

As to back pay, 37 U.S.C. § 204 provides that covered military personnel "are entitled to the basic pay of the pay grade to which assigned or distributed." 37 U.S.C. § 204(a)

(2000). By creating a statutory entitlement to back pay, this statute "can fairly be interpreted as mandating compensation by the Federal Government" and therefore constitutes a waiver of sovereign immunity. By its clear language, however, the entitlement in 37 U.S.C. § 204 extends only to pay at the appropriate grade level. There is nothing in the statute that suggests an intent to waive sovereign immunity for damages that result as a consequence of the government's failure to make timely payments.

Therefore, this court lacks jurisdiction over all of plaintiff's claims except possibly his claim for back pay. As to that claim, plaintiff may have included the amount sought for back pay in the $509,000 in damages sought in the complaint. Plaintiff did not, however, specify that he was making a back pay claim until he filed his response to defendant's motion to dismiss. Therein, plaintiff claims that he received only $3300 of the $5,084.75 in back pay that defendant acknowledged it owed plaintiff. Because defendant did not file a reply to plaintiff's response to defendant's motion to dismiss, defendant has not yet articulated to the court its position, including any challenge to this court's jurisdiction, with respect to plaintiff's claim that he did not receive the full $5,084.75 in back pay. It would appear that the parties should be able to resolve this last remaining dispute quickly.

### Conclusion

For the reasons set forth above, it is hereby ORDERED:

1. Defendant's motion to dismiss is GRANTED with respect to all claims presented by plaintiff except plaintiff's claim for $1,784.75 in back pay.

2. On or before March 16, 2001, defendant shall either file a statement advising the court that the parties have reached an agreement with respect to plaintiff's claim for back pay, or, if the parties are unable to reach an agreement, a reply brief setting forth defendant's position on this sole remaining issue.