AMERICAN FUJI SEAL, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–131C.

United States Court of Federal Claims.

Oct. 30, 1995.

Melvin Greenberg, Newark, NJ, for plaintiff. Melvin Greenberg and Jeffrey S. Berkowitz, on the brief.

James W. Poirier, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss count 1 of the amended complaint for lack of subject matter jurisdiction, RCFC 12(b)(1), and counts 1 and 2 for failure to state a claim upon which relief may be granted, RCFC 12(b)(4). Two issues for resolution are 1) what statute of limitations provision applies to claims against the Check Forgery Insurance Fund, 31 U.S.C. § 3343 (1988), and 2) whether the amended complaint states claims upon which relief may be granted.

## FACTS

The following facts are drawn from the amended complaint, unless otherwise indicated, or constitute undisputed background information. Between January 31, 1988, and January 31, 1989, American Fuji Seal, Inc. ("plaintiff"), filed five Employer Quarterly Federal Tax Returns with the Internal Revenue Service (the "IRS").[1] The liabilities reported on these returns were assessed, and plaintiff made deposits on these liabilities, which were later deemed payments of taxes owed. *See* 26 C.F.R. § 301.6513–1 (1995).[2] After filing the above returns, the IRS' computers erroneously showed that plaintiff had overpaid its tax liabilities and thus, the IRS considered itself obligated to refund certain payments. *See, e.g.,* 26 C.F.R. § 301.6402–1. Between June 20, 1989, and July 24, 1990, the IRS issued eight refund checks drawn from Department of the Treasury to plaintiff in the aggregate amount of $327,583.33, representing refund of the supposed overpayment.

Carlton Chang—plaintiff's accounting manager and later controller from August 1987 to March 13, 1992—wrongfully intercepted the IRS refund checks, fraudulently endorsed and negotiated them, and deposited them in his personal account. Plaintiff first learned of the wrongful interception, endorsement, and negotiation of the refund checks in March 1992, when Mr. Chang confessed to his deeds.[3] Plaintiff stresses that it was not negligent in its supervision of Mr. Chang and that it had "comprehensive controls in place regarding the receipt and deposit of checks made payable to the Company." Plf's Br. filed Aug. 29, 1995, at 2. These controls included using a single stamp for endorsing checks and allowing no employee unrestricted endorsement authority.[4] Plaintiff further points out that it never requested a refund on its original tax deposits; that the refund checks were sent only because of a computer error by the IRS; and that plaintiff had no way of knowing that the refund checks had been sent, or that Mr. Chang forged them, until the IRS demanded repayment.

The IRS on December 23, 1991, after discovering its error, made a supplemental tax assessment against plaintiff in the amount of $533,803.78. This figure includes taxes owed (due to the improper refund of plaintiff's prior tax deposits), plus interest and penalties. According to defendant, "[t]he December 23, 1991 notice was a demand for payment of the supplemental tax assessment, not a demand for repayment of [the] checks...." Def's Br. filed June 9, 1995, at 4. However, it is not disputed that the event occasioning this supplemental tax assessment was the erroneous issuance of refund checks to plaintiff. On February 6, 1992, and October 7, 1992, plaintiff made payments to the IRS to satisfy this supplemental tax assessment. On August 10, 1992, plaintiff submitted an administrative check claim to the IRS for payment of the proceeds of the forged checks. The IRS has not paid plaintiff on this claim. On March 28, 1994, plaintiff filed a complaint with the court alleging that the Government is obligated to pay plaintiff the

---

1. These returns were for the fourth quarter of 1987 and all four quarters of 1988.

2. This regulation sets forth when a tax account deposit is deemed a payment.

3. On June 30, 1994, Mr. Chang was indicted on multiple counts of theft of United States Treasury checks; on September 7, 1994, he pleaded guilty to two of the counts; and on January 5, 1995, judgment was entered against him.

4. Plaintiff contends that Mr. Chang's utilization of an old deposit stamp on the IRS refund checks enabled him to deposit them into his personal account.

proceeds of the forged checks pursuant to the Check Forgery Insurance Fund (the "CFI Fund"), 31 U.S.C. § 3343. Plaintiff amended its complaint on July 14, 1994, consolidating its claims into two counts.

## DISCUSSION

1. *Statute of limitations as to count 1*

Plaintiff claims that it is entitled to payment of the proceeds of the IRS refund checks pursuant to the CFI Fund. Section 3343(b) provides:

> The Secretary of the Treasury shall pay from the Fund to a payee or special endorsee of a check drawn on the Treasury or a depositary designated by the Secretary the amount of the check without interest if—
>
> (1) the check was lost or stolen without fault of the payee ...;
>
> (2) the check was negotiated later and paid by the Secretary or a depositary on a forged endorsement of the payee's or special endorsee's name;
>
> (3) the payee or special endorsee has not participated in any part of the proceeds of the negotiation or payment; and
>
> (4) recovery from the forger, a transferee, or a party on the check after the forgery has been or may be delayed or unsuccessful.

31 U.S.C. § 3343(b). The implementing regulations state that the CFI Fund "governs the issuance of settlement checks for checks drawn [by the United States] ... that have been negotiated and paid on a forged or unauthorized indorsement." 31 C.F.R. § 235.1 (1994). In the session law, Congress stated that the CFI Fund is to act as a "revolving fund," making payments to qualifying parties while being replenished from funds obtained through the reclamation process. Act of Nov. 21, 1941, ch. 489, 55 Stat. 777; *see* 31 U.S.C. § 3343(d).

■ Defendant argues that the court lacks subject matter jurisdiction over plaintiff's amended complaint because it was not filed within the applicable statute of limitations period, which defendant maintains is one year from the dates on which the checks issued. The statute of limitations is jurisdictional in the Court of Federal Claims. *Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1572 (Fed.Cir.1994); *Broughton Lumber Co. v. Yeutter,* 939 F.2d 1547, 1550 (Fed. Cir.1991); *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957) (discussing court's predecessor, United States Court of Claims). Absent a contrary statutory provision, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1988 & Supp. V 1993). In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court noted that statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.* at 117, 100 S.Ct. at 356 (quoting *Railroad Telegraphers v. Ry. Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).

No question exists, and defendant does not contest, that plaintiff filed its claim within the six-year period required by 28 U.S.C. § 2501, the statute stipulating the limitations period for all claims brought before the Court of Federal Claims, unless a specific statute sets forth its own different period. The issue is whether section 2501 applies to claims made against the CFI Fund, or, as defendant contends, whether claims made against the CFI Fund are governed by the statute of limitations provision found at 31 U.S.C. § 3702(c)(1) (1988). Section 3702(c)(1)—which was enacted as part of the Competitive Equality Banking Act of 1987, Pub.L. No. 100–86, § 1004(b), 101 Stat. 552, 659 (1987) ("CEBA")—amended section 3702 by providing for a one-year statute of limitations for settlement of check claims.[5]

5. The previous statute of limitations period under section 3702 was six years. 31 U.S.C. § 3702(c) (1982) (amended 1987).

Specifically, section 3702(c)(1) states: "Any claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of issuance of the check...." The regulations explain that this statute of limitations applies to situations where "[t]he original check has been negotiated and paid on a forged or unauthorized indorsement....", 31 C.F.R. § 245.1 (1994), and in such situations claims must be filed within one year of the date of issuance of the check. 31 C.F.R. § 245.3. Plaintiff filed its claim on March 28, 1994, over one year after the last of the eight IRS checks had been issued. Thus, if this statute of limitations provision applies, plaintiff's claim against the CFI Fund would be barred.[6]

A close examination of the text of section 3702(c)(1) illustrates that it was intended to have broad application. Congress applied the one-year statute of limitations provision in section 3702(c)(1) to "[a]ny claim on account of a Treasury check." In this case it is not disputed that plaintiff's action is on account of Treasury checks. Furthermore, Congress stated unambiguously that these claims must be "presented to the agency that authorized the issuance of such check within 1 year after the date of issuance of the check...." *Id.* Plaintiff failed to do so. It is not relevant whether a claimant makes a claim against the CFI Fund, pursuant to 31 U.S.C. § 3343, or makes a claim for a substitute check pursuant to 31 U.S.C. § 3331 (1988). Either route involves a claim on account of a Treasury check and such claims are specifically governed by section 3702(c)(1).[7]

The CFI Fund was established to provide a remedy for payees or special endorsees of Treasury checks that have been lost or stolen and that have been paid on forged endorsements. Congress stated that the purpose of the CFI Fund

> is to relieve the inequitable condition arising when the payee or a special endorsee of a check drawn on the Treasurer of the United States, which has been improperly negotiated through no fault of the payee or special endorsee and paid upon a forgery of his endorsement, is deprived of the amount due him until such indeterminate future time as recovery has been effected from the forger or the bank or other party cashing the check by setting up a revolving fund ... out of which payment may be made in advance of reclamation.

H.R.Rep. No. 1113, 77th Cong., 1st Sess. at 2 (1941). The inequitable condition that concerned Congress arises because under 31 U.S.C. § 3331(d), the Secretary of the Treasury may issue a substitute check—when the original was lost, stolen, or destroyed—only if "the original check has not been paid." Thus, without the CFI Fund, an innocent party would be required to wait until Treasury reclaims funds before the party could be made whole by issuance of a substitute check.

The CFI Fund was intended to act as a "bridge" fund, allowing certain parties who meet the requirements of section 3343 to receive early repayment of the value of checks that were paid over forged endorsements without waiting for completion of the reclamation process. It was not intended to be a free-standing source of insurance. Pri-

---

6. Section 3702(c)(1) states that the statute of limitations begins to run at the date of "issuance" of the checks in question. Consistent with the Supreme Court's instruction that a statute should be interpreted in accord with its plain meaning, *see Dole v. United Steelworkers of America*, 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990), the court finds no basis to hold that the statute was tolled; thus, the statute of limitations ran on each check in question one year after each check's date of issuance.

7. It has been argued that the requirement in section 3702(c)(1) that claims be brought to "the agency that authorized the issuance" is inconsis-

tent with the structure of section 3343, which requires claimants to bring actions for payment from the CFI Fund directly to the Secretary of the Treasury, not the agency that issued the check. However, in creating the CFI Fund, Congress stated: "The Secretary of the Treasury shall have the power to make such rules and regulations as he may deem necessary or proper for the administration of the provisions of this Act." Act of Nov. 21, 1941, ch. 489, 55 Stat. 777, 778. Consistent with this authority, Treasury promulgated 31 C.F.R. § 245.3(a), which provides: "Any claim on account of a Treasury check must be presented to the agency that authorized the issuance of such check...."

or to 1987 Treasury was allowed six years to reclaim upon checks paid over forged endorsements, 31 U.S.C. § 3712 (1982) (amended 1987), and the payees or special endorsees of such checks were allowed six years to make claims against the Government, 31 U.S.C. § 3702(c) (1982) (amended 1987). CEBA changed this structure by allowing Treasury only one year to seek reclamation and similarly requiring any claim on the account of a Treasury check be brought within one year of the date of issuance of the check. *See* Pub.L. No. 100–86, § 1004, 100 Stat. 552, 659 (1987).

If the court were to accept plaintiff's arguments that section 3702(c)(1) does not apply to the CFI Fund—thus allowing the six-year limitations period of 28 U.S.C. § 2501 to apply—Congress' intent that the CFI Fund serve solely as an intermediate option would be thwarted. Claimants such as plaintiff would be given six years to claim against the CFI Fund, while the Government would have only one year to seek reclamation. The CFI Fund would then cease to be a "bridge" fund and would become instead an independent source of insurance. This Congress did not intend.[8]

Plaintiff argues that there is no relationship between section 3343 and section 3702(c)(1), noting that section 3343, which establishes the CFI Fund, is codified under chapter 33—"DEPOSITING, KEEPING, AND PAYING MONEY" of title 31, while section 3702(c)(1) is codified under chapter 37—"CLAIMS" of title 31. Because no requirement is present that interrelated statutes be codified in the same chapter, this distinction alone does not prevent the application of the statute of limitations provision in section 3702 to the CFI Fund. However, as plaintiff correctly notes, section 3702 does not state that it applies to the CFI Fund; indeed, nowhere in the statute does any cross-reference between the two provisions

appear. Plaintiff further asserts that an examination of the codification of section 1004(b) of CEBA, *i.e.*, section 3702(c)(1), shows that section 3702 applies to the "[a]uthority of the Comptroller General to settle claims," while section 3343 refers to the Secretary of the Treasury's obligation to make payments from the CFI Fund to those claimants who meet section 3343's requirements. *See* 31 U.S.C. § 3702; 31 U.S.C. § 3343(b)(1)–(4).

An examination of the statutes at issue in this matter does not produce a clear-cut resolution. Congress could have been more explicit in expressing the scope of the application of section 3702(c)(1). However, the confusion and uncertainty that arise from examining the Code are largely remedied upon consideration of the session law, which embodies the actual legislation that Congress enacted before it was codified. Section 1004 of CEBA states in its entirety:

(a) IN GENERAL.—Section 3712(a) of title 31, United States Code, is amended to read as follows:

'(a) CLAIMS OVER FORGED OR UNAUTHORIZED ENDORSEMENTS.—

'(1) PERIOD FOR CLAIMS.—If the Secretary of the Treasury determines that a Treasury check has been paid over a forged or unauthorized endorsement, the Secretary may reclaim the amount of such check from the presenting bank or any other endorser that has breached its guarantee of endorsements prior to—

'(A) the end of the 1–year period beginning on the date of payment; or

'(B) the expiration of the 180–day period beginning on the close of the period described in subparagraph (A) if a timely claim is received under section 3702.

'(2) CIVIL ACTIONS.—(A) Except as provided in subparagraph (B), the United States may bring civil action to enforce the liability of an endorser, transferor, deposi-

---

**8.** The CFI Fund was intended to work hand-in-hand with the reclamation process. The CFI Fund makes early payments to qualifying parties, while "[t]he Secretary shall deposit immediately to the credit of the Fund an amount recovered from a forger or a transferee...." 31 U.S.C. § 3343(d); *see* 31 C.F.R. § 235.5. If the court were to adopt plaintiff's position, the CFI Fund would become independent of the reclamation process, and because of the much shorter period allowed to the Government to pursue reclamations, it might no longer be possible to finance the CFI Fund with money obtained through reclamations, thus disabling its "revolving fund" character.

tory, or fiscal agent on a forged or unauthorized signature or endorsement on, or a change in, a check or warrant issued by the Secretary of the Treasury, the United States Postal Service, or any disbursing official or agent not later than 1 year after a check or warrant is presented to the drawee for payment.

'(B) If the United States has given an endorser written notice of a claim against the endorser within the time allowed by subparagraph (A), the 1–year period for bringing a civil action on that claim under subparagraph (A) shall be extended by 3 years.

'(3) EFFECT ON AGENCY AUTHORITY.—Nothing in this subsection shall be construed to limit the authority of any agency under subchapter II of chapter 37 of this title.'

(b) CLAIMS PRESENTED TO AGENCIES.—Section 3702(c) of title 31, United States Code, is amended to read as follows:

'(c) ONE–YEAR LIMIT FOR CHECK CLAIMS.—(1) Any claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of issuance of the check or the effective date of this subsection, whichever is later.

'(2) Nothing in this subsection affects the underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued.'

Pub.L. No. 100–86, § 1004, 101 Stat 552, 659 (1987). Section 1004 of CEBA reveals that Congress intended a continuation of the symmetry between the time the Government is allotted to seek reclamation and the time allowed claimants to bring actions. The structure and text of section 1004 in the session law demonstrate this objective. If the court were to accept plaintiff's position,

the symmetry that Congress endeavored to preserve would be destroyed. Moreover, claimants would receive a windfall that section 3343 was never intended to confer.[9]

It is true that no cross-reference appears between sections 3702(c)(1) and 3343 and that section 3343 refers to the "Secretary of the Treasury," while section 3702(c)(1) is codified under the powers of the Comptroller General. This difference does not prevent the application of this statute-of-limitations provision to claims against the CFI Fund. The absence of a cross-reference between these two provisions does not undermine the interpretation that they are both part of an integrated structure established by Congress to deal with checks paid over forged endorsements. Moreover, the fact that one refers to the Secretary of the Treasury and the other is codified under the powers of the Comptroller General is not dispositive. First, the mere fact that Congress chose to codify section 1004(b) of CEBA in the section of the Code dealing with the power of the Comptroller General to settle claims does not establish that section 3702(c)(1) cannot apply to the CFI Fund. Second, it is clear that the Comptroller General has broad authority to settle claims, *see* 4 C.F.R. § 30.1 (1995), and has appellate authority over decisions by Treasury regarding the CFI Fund, *see Olson v. United States,* 194 Ct.Cl. 297, 302, 437 F.2d 981, 983 (1971); 4 C.F.R. § 32.1 (1995), so the reference in section 3343 to the Secretary of the Treasury does not bar the Comptroller General from having some authority over the CFI Fund.

Plaintiff has made strong textual arguments, but as the Federal Circuit noted, "it is a 'familiar rule that a[n] ... [argument] may be within the letter of a statute, but not within its spirit nor within the intention of its makers.'" *Texas State Comm'n for the Blind v. United States,* 796 F.2d 400, 406

9. Plaintiff argues that this symmetry would not be lost under its construction of the statute because the Government would still be allowed six years to pursue the forger and that the one-year limitation on reclamation actions, in section 3712, only applies to actions against depository institutions. However, section 3712(a)(1) states that the Secretary of the Treasury only has one year to seek a reclamation from "the presenting

bank or any other endorser." An endorser is one who makes an endorsement, and a forger is one who makes an unauthorized endorsement, so the limitation in section 3712 does apply to efforts to reclaim from forgers. *See, e.g., Great American Ins. Co. v. United States,* 202 Ct.Cl. 532, 552, 481 F.2d 1298, 1309 (1973) (discussing U.C.C. § 1–201(43)).

(Fed.Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987) (quoting *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)). The court cannot interpret these statutory provisions in a vacuum, especially since the legislative history of the CFI Fund and structure of section 1004(b) indicate that the two provisions are interrelated. Focusing narrowly on the text, while ignoring the statutory scheme and legislative intent, would be inconsistent with Congress' expressed purpose in enacting these laws. *See generally McDonald's Corp. v. United States,* 926 F.2d 1126 (Fed.Cir.1991). The Federal Circuit has held: "It is a principle of statutory interpretation ... that a court should seek to avoid construing a statute in a way which yields an absurd result and should try to construe a statute in a way which is consistent with the intent of Congress." *Hellebrand v. Secretary of DHHS,* 999 F.2d 1565, 1570–71 (Fed.Cir.1993).

Finally, plaintiff has relied heavily upon *In re: Department of the Navy,* No. B–24266 (Comp.Gen.1993), for the proposition that the Comptroller General himself believes that CEBA, including section 1004(b), did not have any impact on the CFI Fund. While it is true that the Comptroller General states that CEBA did not abolish the CFI Fund, the case does not deal with the issue of whether section 3702(c)(1) applies to claims against the CFI Fund. On that issue it is evident from an examination of the session law, as well as the structure and legislative history of section 3343 and CEBA, that section 3702(c)(1) applies to claims made against the CFI Fund. Therefore, since plaintiff failed to file a claim within one year of the date of issuance of any of the checks at issue, plaintiff's amended complaint must be dismissed.

Defendant characterized the result in argument as "somewhat draconian," which is apt. The court is mindful that Congress' inexact draftsmanship omitted cross-referencing section 3702(c)(2) to the CFI Fund. Nonetheless, the result that plaintiff seeks is so contrary to Congress' expressed intent in establishing the Fund, and to the symmetry manifest between the Government's power to seek reclamation and a claimant's power to make claim on account of a Treasury check, that the court cannot adopt it.

### 2. *Failure to state a claim upon which relief may be granted as to count 1*

Defendant also contends that plaintiff has failed to state a claim upon which relief may be granted, because on the face of its amended complaint, plaintiff cannot meet one of the four statutory requirements set forth under 31 U.S.C. § 3343(b), for payment from the CFI Fund. Specifically, defendant contends that plaintiff cannot meet the requirement that the check was "lost or stolen without the fault of the payee," 31 U.S.C. § 3343(b)(1), arguing that the misdeeds of Mr. Chang should be imputed to plaintiff as his employer. In the alternative, defendant insists that plaintiff was negligent as a matter of law in supervising its employee, Mr. Chang, and therefore does not meet the statutory requirements.

■■■ A motion to dismiss for failure to state a claim should be granted when "it appears beyond doubt that plaintiff can prove no set of facts in support of [the] claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The motion should be granted if a plaintiff cannot assert a set of facts which would support its claim. *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir. 1988). In reviewing a motion to dismiss "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995) (citations omitted). Thus, it is defendant's burden on its motion to dismiss to show conclusively that plaintiff was at fault so as to bar recovery from the CFI Fund.

■■ This case was precipitated by a computer error at the IRS which caused the erroneous issuance of refund checks to plaintiff. Plaintiff did not ask for these refund checks or expect them to be sent. Plaintiff alleges in its amended complaint that it first learned of the conversion of the refund checks in March 1992 when Mr. Chang confessed to the interception, forged endorse-

ment, and wrongful negotiation of these checks. Based on these facts, defendant has asked this court to find plaintiff either per se at fault or guilty of negligent supervision.

If the rule were that every time employees forged checks—while acting within the general scope of their employment—their employers must be found per se at fault, for purposes of 31 U.S.C. § 3343, the remedy offered by the CFI Fund would be rendered a nullity, effectively preventing most employers from availing themselves of the remedy offered by the CFI Fund. Such a result is not mandated by the statute and runs contrary to Congress' purpose in creating the CFI Fund in the first place. *See generally* H.R.Rep. No. 1113, 77th Cong., 1st Sess. (1941). While it is possible that plaintiff was at fault for the forgery at issue, this finding is not compelled by the facts as pleaded in the amended complaint so as to allow for a per se finding of fault.

Defendant argues alternatively that the facts as pleaded in the amended complaint demonstrate conclusively that plaintiff was at "fault" for the purposes of section 3343(b) because it negligently supervised the activities of Mr. Chang. Defendant apparently argues that the fact that Mr. Chang proved to be dishonest in several respects inexorably leads to the conclusion that plaintiff should have discovered this dishonesty and that its failure to do so, before the forgery of the checks at issue, constitutes fault so as to bar recovery from the CFI Fund. Again, plaintiff may have been negligent in its supervision of Mr. Chang, but that finding is not mandated from the facts at hand. Knowledge of the specific policies and actions of plaintiff with regard to employee supervision would be necessary before such a finding can be made. The facts as set forth in the amended complaint do not establish fault on the part of plaintiff, and thus plaintiff has stated a claim upon which relief may be granted.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss count 1 of the amended complaint for lack of subject matter jurisdiction is granted. Were that conclusion not dispositive, defendant's motion to dismiss count 1 of the amended complaint for failure to state a claim would be denied. Defendant's motion to dismiss count 2 of the amended complaint for failure to state a claim is granted. The Clerk of the Court shall enter judgment dismissing the amended complaint without prejudice for lack of jurisdiction as to count 1 and with prejudice as to count 2.[10]

**IT IS SO ORDERED.**

---

10. Plaintiff has also asserted a claim, in count 2 of its amended complaint, against the IRS for payment based upon the underlying debts represented by the checks at issue. Defendant contends that count 2 fails to state a claim upon which relief may be granted. Plaintiff cites no statute, regulation, or case law that recognizes such a claim. Accordingly, count 2 is dismissed pursuant to RCFC 12(b)(4).