James S. SETTE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–157L.

United States Court of Federal Claims.

Oct. 1, 1998.

Clement Theodore Cooper, Washington, D.C., for plaintiff.

Marc A. Smith, Washington, D.C., for defendant. Karen S. Hawbecker, Office of the Solicitor, U.S. Department of the Interior, of counsel.

## OPINION

BRUGGINK, Judge.

Plaintiff James Sette is one of the heirs of Maude Sette, his mother. The complaint alleges that James inherited through Maude all right, title and interest to certain mining claims known collectively as the "Matapan Lode Claims." The claims are alleged to be supported by the discovery of valuable mineral deposits, as demonstrated by the initial application for patent by Fred, James' father. The complaint alleges that certain oral promises, false statements and other actions of representatives of the Bureau of Land Management ("BLM") and the United States Forest Service ("Service") gave rise to a constitutional taking or to a breach of contract.[1] Plaintiff alleges specifically that, as a result, he or his predecessors lost their rights in the mining claims and in the surface improvements. Jurisdiction is asserted under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994), and the Fifth Amendment.

Because none of the alleged actions of the BLM or the Service occurred more recently than six years before the filing of the complaint, the defendant has moved to dismiss on the ground that the action is time barred. *See* 28 U.S.C. § 2501 (1994). The matter is fully briefed and oral argument is deemed unnecessary.[2] The background facts are taken from the complaint and the attachments

---

1. Plaintiff also asserts that he is entitled to issuance of a patent.

2. Plaintiff's initial response to the motion to dismiss was to attempt to file an amended complaint seeking declaratory relief based on the same circumstances. Because the motion to dismiss questions the court's ability to grant any relief, the motion to amend the complaint was denied without prejudice to reassertion assuming the action was not untimely.

submitted by plaintiff in his response to the motion to dismiss. For the reasons set out below, the action is due to be dismissed as untimely.[3]

## BACKGROUND

The Matapan claims are located on federal land in Siskiyou County, California. Plaintiff's father, Fred Sette, filed an application for a mineral patent on the seven claims[4] on September 9, 1952. In response to a determination by the BLM that Fred had not furnished certain specifics about the location of the ore, he filed an amendment to the application. In June 1953, the BLM completed a mineral survey, Fred paid certain fees, and a Final Certificate of Mineral Entry was issued on June 26, 1953. Before the claims were perfected, however, Fred Sette died in July of 1955, leaving his estate to his widow, Maude, who improved the land subject to the claims and made it her residence. In October, 1955, the BLM determined that insufficient evidence of validity had been submitted. In 1956, the BLM closed the file relating to the application for patents without conducting a mineral validity examination. In April, 1962, Maude submitted a Mining Claim Verified Statement pursuant to 43 C.F.R. § 185.130 (1961). The purpose of such a statement is to assert an interest in controlling the surface of the land in opposition to what would otherwise be the Government's right to do so. Before the Government, acting in this respect through the Forest Service, could grant the request, it announced its intent to verify the presence of valuable minerals. On June 21, 1963, Maude withdrew the verified statement, however. This withdrawal did not affect her mineral rights.

On October 23, 1962, Congress passed the "Church–Johnson Act" which provided the Service the right to transfer up to a fee interest in up to five acres to holders of unpatented mining claims. Pub.L. No. 87–581, 76 Stat. 1127. This transfer could only

occur, however, if the mining claims were relinquished. 30 U.S.C. § 701 (1994). In September, 1967, Maude relinquished two mining claims and applied to the Forest Service for a fee interest under the "Church–Johnson Act." That proposal was rejected in May, 1968, apparently because the particular area in which Maude Sette lived was located within the boundaries of the Klamath National Forest, in which the Service wished to retain complete surface control. The Service suggested she apply for less than a fee interest in the parcel she occupied.

In June, 1968, Maude died testate, dividing her estate between the plaintiff and her sister, Emma Grainger. The Service took the position that the right to apply for an interest rested only with claimants who occupied the surface. See 30 U.S.C. § 701. It thus refused to give the same consideration to Maude's heirs, as Emma Grainger and James Sette only occupied the home briefly. James Sette's home was in Wisconsin. The Service did offer, however, to permit the heirs to reapply for a mining patent. If further exploration uncovered valuable deposits, those claims could be pursued. If not, the improvements would have to be removed. Apparently, plaintiff rejected this proposal. On September 16, 1970, BLM canceled the certificate of mineral entry. In October, 1970, Emma Grainger sold her interest in Maude's estate, including a half interest in whatever remained of the Matapan claims, to James. She died in 1974.

In the interim, eligibility to apply for a conveyance under the "Church–Johnson Act" expired as of June 30, 1971. 30 U.S.C. § 701. The Service notified James in 1974 that it would initiate a trespass action if the improvements were not removed. Nevertheless, in August, 1975, James moved into the home on a full-time basis. The Service and BLM subsequently took the position that his continued presence, as well as that of improvements, was an unauthorized occupancy.

---

**3.** It is therefore unnecessary to parse the complaint in terms of whether it states a cause of action within the court's subject matter jurisdiction.

**4.** It is not entirely clear whether there were seven or nine claims. Although Fred's original application lists seven, other documents submitted to the Service by Maude appear to reference as many as nine claims. This uncertainty does not preclude consideration of the matter.

In 1977, the Service initiated a "contest action" to challenge occupancy by plaintiff. Events become somewhat clouded at this point, at least from the record furnished. Apparently the dispute over James' right to occupancy became the subject of an action in the district court, which remanded the matter to the Department of Interior for an assessment of validity of mining claims. *See* Order of November 4, 1981, *Sette v. Department of Interior,* No. S–80–593 (E.D.Cal. 1981). On remand, the Secretary of Interior found plaintiff's claims to be null and void. This finding was affirmed without opinion by the Ninth Circuit in 1983. *See* 709 F.2d 1518 (9th Cir.1983).

The most recent actions of either BLM or the Service referenced anywhere in the complaint or in other plaintiff submissions are the letter of October 12, 1984 from BLM to plaintiff rejecting a request to convey a portion of the land and a similar letter dated October 30, 1986.

## DISCUSSION

Substantially more than six years elapsed between the date of the last action of the defendant recited in the complaint, September 16, 1970, (cancellation of the Final Certificate of Mineral Entry) and March 5, 1998, the date the complaint was filed. Not surprisingly, therefore, defendant contends that the present action is time-barred by the six year limitation period of 28 U.S.C. § 2501. Limitations periods traditionally have been strictly construed in suits against the United States. *Soriano v. United States,* 352 U.S. 270, 273–274, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). In *Irwin v. Department of Veterans Affairs,* however, the Court held that it is not inappropriate to inquire whether the limitations period has been equitably tolled even in suits against the Government. 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). That inquiry takes into account the precise nature of the waiver. In *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), the Court declined to consider tolling in a tax case when the applicable limitations period was repeatedly and forcefully expressed in the statute. The

Court held that the particular language "cannot easily be read as containing implicit exceptions." *Id.* at 851.

Section 2501 is also not congenial to equitable exceptions: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The court is not aware of any decision in this circuit in which waiver or estoppel was successfully invoked in an action subject to section 2501, other than on the basis of fraud, or, where there had been some prior filing. With respect to section 2501, in other words, equitable tolling means no more than that the more traditional concepts of fraudulent concealment and inherent unknowability will be applied. *See, e.g., Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573 (Fed.Cir.1988); *Japanese War Notes Claimants v. United States,* 178 Ct.Cl. 630, 373 F.2d 356 (Ct.Cl.), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

In the present circumstances, however, neither the broader avenues opened up by "equitable tolling" nor the defenses to the statute offered in *Japanese War Notes* has any serious application. It is difficult to tell from the complaint and briefs precisely what it is that allegedly constitutes either a breach of contract or a taking. Nevertheless, if the cause of action arose on September 16, 1970 when BLM canceled the certificate of mineral entry,[5] no suggestion is offered that that event was concealed from plaintiff or Emma Grainger, or that the cancellation was inherently unknowable. Indeed, the issue of patent ownership was resolved, as it should have been, initially within the Department of Interior and then on appeal to the district court in an action initiated by the plaintiff. That issue is therefore now foreclosed.

If the alleged taking or breach of contract occurred in 1967 when Maude executed a "relinquishment of Mining Claims," once again, this action was obviously not concealed from her. The failure of whatever promises were allegedly deceitfully made to Mrs. Sette in obtaining that relinquishment would have

**5.** This is apparently only reflected as a minute entry on the Final Certificate of Mineral Entry.

become apparent to her at some point when no fee was forthcoming.[6] In other words, the "breach" would have been complete during her lifetime and plaintiff would have inherited nothing but a cause of action, if that. There is no further basis alleged for indefinitely suspending the running of the limitations period after her death. Absent some specific allegation that there was a deliberate effort to keep plaintiff ignorant of the "true" facts, the present allegations of misrepresentation and fraud show that the circumstances were not inherently unknowable. The BLM's letter of October 12, 1984 makes it clear that plaintiff was then making the same breach of contract allegations. Moreover, the "CHRONOLOGY LIST OF LETTERS" included in plaintiff's appendix lists letters written in 1984 and 1985 in which the plaintiff alleges "False Representations," "Bad Faith" and "Fraud/Denial of 5th Amendment." He was obviously aware at that time of the basis of his present claim.

In any event, the court notes that the factual assertions implicit in this argument—that Service employees lied to Mrs. Sette by representing things that were not true and that this cabal was concealed after plaintiff inherited the property—have absolutely no basis in fact. Mrs. Sette was entitled to apply under section 701 for occupancy rights in the lands subject to claim and she did. The Service was entitled to reject her request for a fee in a particular five acre tract and it did. The record also demonstrates that the Service continued to consider Maude's request as one for a life estate on the parcel she occupied and it and the BLM continued to communicate with Emma Grainger and the plaintiff after the agencies became aware of the death of Maude. The documentary record shows anything but a deliberate attempt to hide facts or deceive plaintiff or his predecessors.

The fact that a Forest Service District Ranger recommended giving Maude fee title, and that recommendation was not acted upon, assuming that fact could somehow be actionable, is not inherently unknowable or evidence of deception. As is the case with much of the governmental activity in this long administrative record, the actions could have been, and in some cases were, challenged administratively or in district court. The mere fact that plaintiff has discovered some of the administrative activities late in the day, or that he has been unsuccessful in obtaining relief from the agency, does not, through legal alchemy, create a new cause of action in breach of contract or takings, complete with its own rationale for not sooner suing here. The place to challenge actions or inactions in connection with the claim to occupancy of the surface or to the improvements was at the agency or before the district court and the time to do so has long since elapsed.[7] Nor is it evidence of fraud that government employees may have been mistaken in making representations about Maude's entitlement to relief. Even assuming such mistakes were made, in the face of the presumption that government employees act honorably, the record here does not support any inference of fraud or concealment.

Defendant's motion to dismiss puts squarely at issue the timeliness of the complaint. In his oppositions to the motion, however, the plaintiff points to no specific facts to support the contention that the government engaged in "affirmative misconduct" or a "species of fraud," much less that this affirmative misconduct excuses a 28 year or longer delay in bringing a claim. The assertions to the contrary are frivolous. It is therefore unnecessary to ask plaintiff to further explain the numerous other apparent substantive deficiencies in the complaint. The Clerk is di-

---

6. The court holds that the fact of transfer of the claims by Maude to her successors does not toll the limitations period. Assuming the Service lied to Maude, it had no obligation to subsequent owners to notify them of those prior conversations. Nothing in the transfers of ownership makes the asserted fraud or breach of contract inherently unknowable.

7. In the complaint, plaintiff alleges that the log cabin he occupied was bulldozed. No date is given and the court's efforts to determine a date from the record were unsuccessful. A September 14, 1982 letter from the Service to plaintiff threatens imminent destruction, however. Defendant's motion obligated plaintiff to allege any facts to suggest that the filing was timely. The court is thus entitled to assume that demolition occurred before 1992.

rected to dismiss the complaint with prejudice.