**Denis C.F. YAP, Plaintiff,**

v.

**Rodney E. SLATER, in his Capacity as the Secretary of the United States Department of Transportation, Defendant.**

**No. Civ. 99–458 ACK.**

United States District Court,
D. Hawaii.

Feb. 9, 2001.

Clayton C. Ikei, Honolulu, HI, for Denis C.F. Yap, plaintiff.

Thomas A. Helper, Office of the United States Attorney Honolulu, HI, for Rodney E. Slater, in his Capacity as the Secretary of the United States Department of Transportation, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

The facts of this case are fully set forth in the Court's Order filed October 5, 2000, granting Defendant's Motion for Partial Summary Judgment. The following summarizes only those facts necessary for an understanding of the disposition of the issues in this motion.

Denis C.F. Yap ("Plaintiff") worked as an air traffic controller ("ATC") for the Federal Aviation Administration ("FAA") from June 1973 to February 19, 1999. Plaintiff was forced to retire when he reached the age of 56 pursuant to the mandatory retirement provisions of Public Law 92–297. On December 11, 1996 and January 15, 1999, Plaintiff sent letters to Senators Inouye and Akaka opposing Public Law 92–297 ("Congressional Complaints").

Between December 15, 1997 and December 9, 1998, Plaintiff applied for five positions with the FAA that were not subject to the mandatory retirement provisions of Public Law 92–297. Plaintiff was not selected for any of these positions. Plaintiff alleges that he was not selected for the positions in retaliation for his opposition to the mandatory retirement provisions of Public Law 92–297. Additionally, Plaintiff alleges that the non-selections constitute age discrimination.

There are several steps to the process for selecting a person to fill a vacancy with the FAA. First, after a job announcement closes, applicants have seven days to submit their applications. *See* Ex. N to Pl.

Opp. at 19:9 to 19:13. Then the applications are reviewed to determine the class (promotional, ingrade/downgrade, or repromotional) of each applicant. *Id.* at 19:18 to 19:23. The applicants are then scored by their immediate supervisor or manager. *Id.* at 24:2 to 24:4. Using these scores and classifications, the Personnel Management Office creates a Certificate of Best Qualified Candidates ("Selection List"). The applications for those listed on the Selection List are forwarded to the Selecting Official to choose an applicant to fill the vacancy. The Selecting Official can select any person off of the Selection List to fill the vacancy without regard to the candidates' class or score. *Id.* at 36:7 to 36:14. The Selecting Official is required to document and state the reasons for his selection and non-selection of each candidate.

Mr. Robert Rabideau was the Selecting Official for the five positions for which Plaintiff applied.[1] For each of the five positions, Plaintiff was placed on the Best Qualified List but was not selected by Mr. Rabideau to fill the vacancy. Plaintiff was informed that he had not been selected for the positions on January 24, 1998, February 25, 1998, August 11, 1998, October 28, 1998, and February 8, 1999. *See* Exs. F, G, H, I, and J to Def. Motion. As required, Mr. Rabideau documented his reasons for not selecting Plaintiff and for selecting another candidate. *See Id.*

On or about May 14, 1999, Plaintiff gave notice of his alleged age discrimination to the Equal Employment Opportunity Commission. On June 28, 1999, Plaintiff filed a Complaint alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1994) ("ADEA"), and his right to equal protection under the Fifth Amendment. On October 5, 2000, this Court dismissed Plaintiff's claims that the mandatory retirement provisions of Public Law 92–297 violated the ADEA and that the disparate enforcement of Public Law 92–297 violated the Fifth Amendment. On December 4, 2000, Defendant filed the instant Motion to Dismiss or in the Alternative for Summary Judgment on Plaintiff's remaining claims that the non-selections constitute age discrimination and retaliation under the ADEA. Defendant filed a concise statement of facts in support on the same day. As matters outside the pleadings have been presented for the Court's review, the Court will treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(c). Plaintiff filed an Opposition and concise statement of facts on January 18, 2001. Defendant filed a Reply and a concise statement of facts in reply on January 25, 2001. A hearing on the Motion was held February 5, 2001 at 10:30 a.m.

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex*

---

1. The parties dispute whether Mr. Rabideau was aware of Plaintiff's Congressional Complaints prior to the non-selections. The date Mr. Rabideau learned of the Congressional Complaints is a material fact. If Mr. Rabideau was unaware of the Congressional Complaints at the time he made the non-selections, Plaintiff would be unable to demonstrate a causal connection between the alleged protected activity and an adverse employment action and therefore could not make out a prima facie case of retaliation. *See* Def. CSF in Reply ¶ 12.

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.*, 809 F.2d at 630–31.

## DISCUSSION

### I. *TIMELY NOTICE TO THE EEOC*

Defendant argues that summary judgment must be granted on Plaintiff's claims based on the first four of the non-selections because Plaintiff did not give timely notice to the EEOC of the alleged discrimination for these non-selections. Plaintiff counters that the limitations period has not run for the first four non-selections under the continuing violation doctrine. The Court finds that Plaintiff has shown a continuing violation that extended into the limitations period and therefore Plaintiff's complaint is timely for all five non-selections.

■ A federal employee alleging violations of the ADEA need not exhaust administrative remedies, but may file a

complaint in federal court in the first instance. *See* 29 U.S.C. 633a(d); *Stevens v. Department of Treasury,* 500 U.S. 1, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991). When a plaintiff chooses to forgo administrative remedies, he is required to give notice of his intent to do so to the EEOC within 180 days of the date of the alleged unlawful act and not less than 30 days prior to filing suit. *See Stevens,* 500 U.S. at 6–7, 111 S.Ct. 1562.

Plaintiff gave notice of intent to sue to the EEOC on May 14, 1999. Thus, in order for the filing to be timely, the discriminatory act must have taken place after November 15, 1998. Only the February 8, 1999 non-selection falls within this 180 day period. *See Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (finding that a cause of action accrues when the plaintiff is informed of the personnel decision at issue). Therefore, claims based on the earlier non-selections would be timed-barred unless they fall within the continuing violation doctrine.

■■■■ A plaintiff can establish a continuing violation by producing evidence of a serial violation. "A serial violation is established if the evidence indicates that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Morgan v. National Railroad Passenger Corp.,* 232 F.3d 1008, 1015 (9th Cir.2000). In order to survive summary judgment for failing to satisfy the limitations period, a plaintiff must demonstrate a genuine issue of material fact as to the existence of a serial

violation as well as the existence of a violation within the limitations period. *See Fielder v. UAL Corp.,* 218 F.3d 973, 984 (9th Cir.2000). The parties do not dispute that the February 8, 1999 non-selection falls within the limitations period.

■■■■ As for the existence of a serial violation, Plaintiff has alleged that he was subject to discriminatory retaliation and age discrimination from January 24, 1998 to February 19, 1999 when he was forced to retire, by being denied promotions. Each of the five non-selections was made by the same supervisor and followed Plaintiff's Congressional Complaints. Plaintiff alleges that the same impermissible factors account for each of the non-selections. As each of the non-selections are plausibly related to Plaintiff's age and/or Congressional Complaints, Plaintiff has alleged a continuing violation.[2] *See Morgan,* 232 F.3d at 1017 (finding that the pre-limitations conduct is sufficiently related because "the same players were involved in each of [the] incidents, and the incidents demonstrate a regular pattern of potentially retaliatory conduct"); *Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.1990) ("[A]ll the acts [plaintiff] alleged are plausibly related as acts of discrimination against [plaintiff] because of his identification as a Mexican–American"); *Williams v. Owens–Illinois,* 665 F.2d 918, 924 (9th Cir.1982) (stating that "continuing violations are most likely to occur in the matter of placements or promotions ... a [plaintiff] who is not promoted in 1973, for example, and is subject to a continuing policy against promotion of minorities, may then file a timely charge in 1976, because the policy against promoting him or her continued to

2. Defendant argues that this Court should follow the continuing violation tests of the Fifth and Seventh Circuits that prevent a plaintiff from reaching back to any conduct outside the limitations period that would have triggered plaintiff's awareness of her right to sue earlier. However, the Ninth Circuit has explicitly rejected this rigid notice rule. *See Morgan,* 232 F.3d at 1015 (rejecting the tests elucidated in *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164 (7th Cir. 1996) and *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983)).

violate the employee's right up to the time the charge was filed").

Accordingly, the Court finds that the continuing violations doctrine allows for consideration of each and every of the non-selections.

## II. RETALIATION UNDER THE ADEA

■ Plaintiff has alleged that the non-selections constitute unlawful retaliation under the ADEA.[3] Section 623(d) of the ADEA makes it unlawful for an employer to retaliate against an employee for opposing "any practice made unlawful by [the ADEA], or because such [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d).

### A. APPLICABILITY OF § 623(d) TO FEDERAL EMPLOYEES

■■ The United States, as sovereign, is immune from suit unless it consents to be sued. See Lehman 453 U.S. at 160, 101 S.Ct. 2698. Additionally, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Where Congress waives the Government's immunity from suit, as it has in § 633a of the ADEA, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

The ADEA was initially enacted to protect private sector employees from discrimination based on age, and was amended by Congress in 1974 to extend protection to federal employees. See Lehman v. Nakshian, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). When the ADEA was amended "Congress added an entirely new section, [29 U.S.C. § 633a], to address the problems of age discrimination in federal employment." Id. at 166, 101 S.Ct. 2698. The ADEA makes clear that federal employees are not protected by all sections of the ADEA, only what is codified at §§ 633a and 631(b). See 29 U.S.C. § 633a(f) ("Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by any provision of [the ADEA], other than the provisions of section 631(b) of this title and the provisions of this section."); see also Johnson v. Mayor of Baltimore, 472 U.S. 353, 356 n. 1, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985) (noting that, "Federal employees are covered in a separate section of the [ADEA] and are treated differently from nonfederal employees...."); Lehman, 453 U.S. at 167, 101 S.Ct. 2698 (stating that "federal actions covered by [§ 633a] are not subject to any other section of the ADEA"). This exclusivity provision makes it clear that Congress did not intend to allow the importation of other provisions of the ADEA when interpreting § 633a. Section 633a contains a general proscription against age discrimination but does not expressly include a proscription against retaliation. Section 633a(f) prevents federal employees from using remedies or actions not enumerated in § 633a.

This strongly suggests that Congress declined to waive sovereign immunity with respect to retaliation claims brought pur-

---

3. When analyzing a claim of retaliation under the ADEA, courts look to case law under the ADEA and Title VII. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994) ("We combine the Title VII and ADEA claims for analysis because the burdens of proof and persuasion are the same."); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1441 (9th Cir.1990).

suant to § 623(d) of the ADEA. *See Koslow v. Hundt,* 919 F.Supp. 18 (D.D.C.1995) (dismissing retaliation claim under the ADEA brought by a federal employee because United States had not waived sovereign immunity). Other courts, however, have apparently assumed that § 633a encompasses a cause of action for unlawful retaliation. *See DeNovellis v. Shalala,* 135 F.3d 58, 65–66 (1st Cir.1998) (considering merits of ADEA retaliation claim brought by federal employees); *Limongelli v. Postmaster General of the United States,* 707 F.2d 368, 372–73 (9th Cir.1983) (claim for failure to promote brought under ADEA; associated claim of retaliation not considered because not properly exhausted); *Lutes v. Goldin,* 62 F.Supp.2d 118, 133 (D.D.C.1999) (considering retaliation claim under the ADEA in conjunction with retaliation claim under Title VII); *Jones v. Brown,* 1996 WL 11099 at *6 (N.D.Ill. Jan.4, 1996) (denying defendant's motion for summary judgment on ADEA retaliation claim).[4]

The parties have proceeded on the common ground that a discharge in retaliation for a complaint of age discrimination is actionable by a federal employee, and the Court finds that it need not determine whether a federal employee may bring a retaliation claim under the ADEA because the Court can decide the issue on other grounds. *See Tomasello v. Rubin,* 167 F.3d 612, 618, 619 n. 9 (D.C.Cir.1999) (declining to reach issue of sovereign immunity for an ADEA retaliation claim because issue disposed of on other grounds); *Miller v. United States,* 813 F.2d 402, 1986 WL 16231 (4th Cir. Sept.11, 1986) (declin-

ing to decide whether a federal employee may bring a retaliation claim under the ADEA and deciding case on other grounds).[5]

## B. *PRIMA FACIE CASE OF RETALIATION*

◼ In order to establish a prima facie case of retaliation, Plaintiff must show that 1) he engaged in a protected activity; 2) he was subjected to an adverse employment action; and 3) that a causal connection exists between the two. *See Trent v. Valley Electric Ass'n,* 41 F.3d 524, 526 (9th Cir.1994). Defendant asserts that Plaintiff cannot make out a prima facie case of retaliation because the Congressional Complaints do not constitute a protected activity. Defendant's contention is that the Congressional Complaints do not oppose an unlawful practice of the employer (the FAA), but instead oppose an act of Congress that Plaintiff feels is unlawful. The Court need not resolve this dispute because the motion can be decided on other issues. *See United States Postal Sev. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149–50 (7th Cir.1996) ("[T]his court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case.").[6]

---

**4.** The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

**5.** The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

**6.** The question presented to the Court by Defendant's argument is whether or not lobbying Congress for the repeal of a law that has been lawfully implemented by one's employer is a "protected activity." In broader terms, whether the provisions of 29 U.S.C. § 623(d) provide a cause of action in a situation where a federal employee is retaliated against for

## C. BURDEN–SHIFTING ANALYSIS

 Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to show that the adverse employment action was taken for legitimate non-retaliatory reasons. *See Wallis*, 26 F.3d at 889. If the defendant offers a legitimate non-retaliatory reason for the decision, the burden shifts back to the plaintiff to show that the defendant's offered reason is pre-textual. *Id.*

Defendant presented a legitimate non-retaliatory justification for the non-selections: Plaintiff was not selected for the promotions because a more qualified individual was chosen on each of the five occasions. Mr. Rabideau, the Selecting Official, completed a "Basis for Selection" for each of the non-selections explaining the criteria used to make the selection and the basis for his decision not to choose Plaintiff and to choose another candidate. *See* Exs. F, G, H, I, J to Def.Mot. (For example, "Candidate ... Yap ... [does] not have the facility diversity experience desired. [He] also did not receive recommendations from [his] immediate and/or previous supervisor/managers for this position and [was] eliminated from further consideration.") Ex. G to Def.Mot. at 8.

 Thus, the burden shifts back to Plaintiff to rebut the legitimate non-retaliatory reason for the non-selections. To survive summary judgment, Plaintiff must "produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for [the non-selections] was false, or (b) that the true reason for the [non-selections] was a discriminatory one." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.1996). Where a plaintiff presents direct evidence of an impermissible motive or evidence that the true reason for the action was retaliation, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998); *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991) (where plaintiff presents direct evidence of a discriminatory motive, "very little evidence" is required to survive summary judgment). On the other hand, where a plaintiff attempts to rebut the alleged legitimate reason by showing that it is in actuality false via circumstantial evidence, for example, that the explanation for the action changed over time, the evidence "must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to [retaliate]." *Id.* at 1222.

lobbying Congress to change a law that the employee is subject to and reasonably believes to be unlawful under the ADEA.

The Ninth Circuit has stated that an "employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to some practice by the *employer* that is allegedly unlawful." *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (emphasis added); *see also Silver v. KCA, Inc.*, 586 F.2d 138, 141 (holding that where employee is terminated for confronting a co-worker about a racial comment, employer does not violate Title VII because employee did not oppose an employment practice of the employer). In order to be a "protected activity" under § 623(d), an employee's actions must oppose an employment practice of the employer. Although Plaintiff is a federal employee, Congress is not Plaintiff's employer and therefore enactment of Public Law 92–297 can not be considered an unlawful employment practice of Plaintiff's employer.

The only employment practice attributable to Plaintiff's employer, the FAA, is implementing Public Law 92–297. The FAA did not write, create, or determine the mandatory retirement age set by Public Law 92–297. While Plaintiff could reasonably believe that Public Law 92–297 violated the ADEA, it is not reasonable to believe that the implementation of a law duly enacted by Congress is itself an unlawful employment practice under the ADEA.

■ Plaintiff attempts to show that Mr. Rabideau's bases of selection were pre-textual both by presenting direct evidence of a retaliatory motive and by attacking the legitimacy of the proffered reason for the non-selection. As direct evidence of a retaliatory motive, Plaintiff points to his deposition testimony regarding a conversation he had with a friend and co-worker, Louis Parresa. Plaintiff stated during his deposition that Mr. Parresa told him that Mr. Rabideau had told Mr. Parresa that the reason Plaintiff was not given a promotion in 1997 was that Mr. Rabideau was "pissed ... because [Plaintiff] wrote those letters to the congressmen." Ex. Q to Pl.Opp. at 45:2 to 46:13. This evidence is problematic for two reasons. First, Mr. Parresa has submitted a Declaration stating that when he spoke with Plaintiff regarding Plaintiff's Congressional Complaints, he "speculated that the letters might have been upsetting to the FAA and/or Bob Rabideau ... based solely on my personal speculation." *See* Ex. A to Def. Reply at ¶ 5. Mr. Parresa stated that he has never discussed the Congressional Complaints with Mr. Rabideau. *Id.* Mr. Parresa's alleged statements are inadmissible as hearsay, and not subject to an exception to the hearsay rules.[7] Therefore, the Court finds that this allegation does not create a genuine issue of material fact as to a retaliatory motive for the non-selections.

■ Plaintiff presents three additional arguments that there is a genuine issue of material fact as to whether or not Mr. Rabideau's actions were motivated by a retaliatory animus. First, Plaintiff appears to argue that statements allegedly made by Mr. Rabideau, in regard to the signatories to a petition protesting a management decision distinct and different from the mandatory retirement policy, evidence a disposition towards retaliation or a retaliatory nature. *See* Ex. Q to Pl.Opp. at 59:14 to 62:12. These alleged statements are not in any way connected to Plaintiff's opposition to mandatory retirement and are not evidence of a retaliatory motive for the non-selection that was based on the Congressional Complaints.[8] Secondly, Plaintiff argues that Mr. Rabideau's "surprise" in regard to Plaintiff's actions in confronting the visiting Western Region Air Traffic Division Manager about mandatory retirement is evidence of retaliatory animus. Defendant does not dispute that Mr. Rabideau evidenced surprise at Plaintiff's actions. The Court finds that Mr. Rabideau's admitted surprise at Plaintiff's actions is not evidence of an unlawful retaliatory motive for the non-selections as there is no evidence that Mr. Rabideau felt the Plaintiff's actions were inappropriate or that Mr. Rabideau was upset at Plaintiff's actions. Lastly, Plaintiff alleges that Mr. Rabideau stopped assisting Plaintiff in his attempt to find a new job not subject to the mandatory retirement provisions of Public Law 92–297 after Plaintiff sent his December, 1996 letters.[9] Plaintiff conceded at oral argument that Plaintiff had not asked Mr. Rabideau for further help and that assisting employees in obtaining new positions is outside the scope of Mr. Rabideau's employment duties. As Plaintiff did not request Mr. Rabideau's help in finding a new position, Plaintiff cannot

---

7. Plaintiff conceded at oral argument that Mr. Parresa's alleged statements could not be used as substantive evidence of a retaliatory motive.

8. Plaintiff has not presented any evidence that Mr. Rabideau ever acted in a retaliatory manner towards the signatories of the petition.

9. The parties do not dispute that in 1997, Mr. Rabideau helped set up an interview for Plaintiff for a position as an Air Traffic Control Specialist, a position that was later determined to also be subject to the age 56 mandatory retirement provision.

show any connection between Mr. Rabideau's inaction and the Congressional Complaints. The Court finds that Mr. Rabideau's failure to further aid Plaintiff in his search for a new job is not evidence of a retaliatory motive for the non-selections. Accordingly, the Court finds that Plaintiff has failed to present sufficient direct evidence of a retaliatory motive to survive a summary judgment motion.

■■■ Plaintiff also argues and presents evidence that defendant's proffered reasons for the non-selections are pre-textual. For each non-selection, Mr. Rabideau stated the reasons for plaintiff's and other candidates' non-selection and the reasons for the selecting the candidates who received the job. For the January 24, 1998 non-selection, Plaintiff and seven other candidates were not chosen because they "were not recommended by their immediate and/or previous supervisor/manager." Ex. F to Def.Mot. at 7. The two candidates chosen had "technically diverse experience with several performance recognition awards and . . . were highly recommended by supervisory workforce and facility management." *Id.* For the February 25, 1998 non-selection, Plaintiff and six other candidates were not chosen because they did "not have the facility diversity experience desired [and] did not receive recommendations from their immediate and/or previous supervisor/managers for this position." Ex. G to Def.Mot. at 8. The candidate chosen had "facility diversity experience and strong recommendations from his supervisors and managers [and][h]is problem solving ability, work ethic, and interpersonal communication skills are applauded by all the supervisors at his facility and reflected in the awards he has received." *Id.* The August 11, 1998 non-selection of Plaintiff was made because Plaintiff "has not shown initiative and excellence in performance as evidenced by his lack of self-development, performance awards, and non-recommendation by management/su-

pervisory personnel and because Plaintiff and four other candidates were not recommended by their immediate and/or previous supervisor for this position." Ex. H to Def.Mot. at 8. The applicant chosen for the position had "strong recommendations from his supervisors and managers [and][h]is problem solving ability, work ethic, and interpersonal communication skills are applauded by all the supervisors at his facility." *Id.* On October 28, 1999, Plaintiff was informed that he had not been selected for a promotion because he "did not show initiative and excellence in performance as evidenced by the lack of self-development, recent performance awards, and/or participation/involvement" and because Plaintiff and five other candidates "were not recommended by their current/previous supervisor/manager for this position." Ex. I to Def.Mot. at 6. The two candidates chosen "were both highly recommended [and][t]heir experience, involvement, work ethics, creativity, and communication skills have been recognized by their facility." *Id.* Finally, on February 8, 1999, Plaintiff was not selected, along with four other candidates because although they had "excellent technical experience to be successful . . . [they] were not recommended by their immediate and/or previous supervisors/managers." Ex. J to Def.Mot. at 7. The candidates chosen were highly recommended and commended for their awards and skills. *Id.*

Plaintiff does not dispute that he did not have recommendations from supervisors or managers, nor does he dispute that he lacks facility and job diversity. In fact, Plaintiff does not argue that the reasons given by defendant for the non-selections were false. He argues instead, that although each reason given is technically true, they are not the real basis for the non-selection. Plaintiff argues that the proffered reasons are not the real reasons because: 1) Mr. Rabideau based the non-

selection of Plaintiff on Plaintiff's failure to present recommendations or qualifications that were not required for the job or application, 2) Plaintiff's qualifying scores were higher than those of the applicants chosen, and 3) the stated reasons for selecting an applicant for one position and not selecting the same applicant for another position were contradictory.

Defendant does not dispute that although Mr. Rabideau took them into consideration in choosing a candidate, recommendations and facility and job diversity were not per se requirements for the positions applied to by Plaintiff. However, Selecting Officials are encouraged to take into consideration factors not necessarily discernable from a candidate's application, such as recommendations from supervisors. *See* Dec. of Leslie Ross at ¶ 4(g); FAA Regulation 3330.1B. Additionally, Plaintiff does not dispute that Mr. Rabideau recommended that he "market himself" to supervisors in order to be selected for a vacancy. *See* Ex. Q to Pl.Opp. at 114:22 to 115:7. However, Plaintiff refused to seek such recommendations from his supervisors by what he considered "brown-nosing". *Id.* The Court finds the fact that Mr. Rabideau considered qualifications and application materials beyond those needed to meet the minimum standards for applying for a vacancy to not be specific, substantial evidence of pretext.[10]

 Similarly, the fact that some of the candidates chosen received a lower qualifying score than Plaintiff is not specific, substantial evidence of pretext. There is no requirement that the Selecting Offi-

cial consider the qualifying scores received by candidates. *See* Dec. of Leslie Ross at ¶ 4(f) ("In making the selection, Selecting Officials generate 'Selecting Official Criteria' to describe the traits they are looking for in the position they are attempting to fill. It is the Selecting Official Criteria, not the generic 'Evaluation Criteria' or the numerical 'Rating', that the Selecting Official must adhere to in the selection decision.").[11] Mr. Rabideau stated that the scores received by candidates were irrelevant to his selection process. *See* Ex. O to Pl.Opp. at 41:4 to 41:17.

 Lastly, Plaintiff argues that Mr. Rabideau gave conflicting reasons for selecting candidate Bujnowski for one position and not selecting him for another position, suggesting that the explanations given for selections and non-selections are not accurate or truthful. However, Plaintiff misstates the basis of selection and non-selection for the two positions. Mr. Bujnowski was selected for Vacancy No. 25124 because he had "technically diverse experience with several performance recognition awards" and was recommended for his "ability to communicate in a[sic] effective and humanistic manner" as well as being "highly respected by [his] peer group." Ex. F to Def.Mot. at 7. Mr. Bujnowski was simultaneously not selected for Vacancy No. 25137 because he lacked "facility diversity experience", as distinct from job diversity, and did not have recommendations for "this position", as distinct from a recommendation in regard to communication skills. Ex. G to Def.Mot. at 8. The Court finds that there are no

10. The Court notes that for each non-selection at least four other candidates were not chosen for the position for the same or fewer reasons than Plaintiff. Plaintiff has not shown that he was singled out, treated differently or required to present applications materials not required of other candidates.

11. The Court notes that while the candidates were each given scores/ratings, the candidates were not "ranked", because there were fewer than 10 promotional candidates for each vacancy. When candidates are not "ranked", "there is no requirement to verify the Rating number·since the Rating has no relevance ... and is not generated for use by the Selecting Official." Dec. of Leslie Ross at ¶ 4(e).

obvious inconsistencies in these bases of selection that would constitute specific and substantial evidence of pretext.

The Court finds that Plaintiff has not met his burden of creating a genuine issue of material fact as to the pre-textual nature of Defendant's proffered legitimate reason for the non-selections. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claims of retaliation under the ADEA.

### III. *AGE DISCRIMINATION*

 Plaintiff contends that the non-selections constitute unlawful age discrimination. The parties do not dispute that Plaintiff has alleged sufficient facts to make out a prima facie case of age discrimination.[12] Once the prima facie showing is met, the Defendant can rebut the showing by demonstrating that there was a non-discriminatory reason for his dismissal. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that upon a showing of a non-discriminatory reason for its employment decision the presumption of unlawful discrimination "simply drops out of the picture"). The Plaintiff must meet his burden of showing that the Defendant's reason is pre-textual by presenting evidence beyond that used to meet his prima facie burden. *See Wallis*, 26 F.3d at 892.

 Defendant has met his burden of demonstrating a non-discriminatory reason for the non-selections. *See* supra § II.C. The only evidence that the Plaintiff has presented to show that the non-selections were due to age discrimination is the bald assertion that he was the older than the candidates chosen. The Court finds that this assertion standing alone is insufficient to withstand a motion for summary judgment. There is no extrinsic evidence that Defendant did not select Plaintiff because of his age.[13] Additionally, Plaintiff has failed to present specific and substantial evidence that the non-discriminatory reason for the non-selections given by Defendant are pre-textual. *See* supra § II.C.

The Court finds that Plaintiff has failed to meet his burden of demonstrating that there is a genuine issue of material fact in regard to the pre-textual nature of Defendant's non-discriminatory reason for the non-selections. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claims of age discrimination under the ADEA.

### *CONCLUSION*

For the foregoing reasons the Court GRANTS Defendant's Motion for Summary Judgment as to claims of age discrimination and retaliation under the ADEA.

IT IS SO ORDERED.

---

**12.** To establish a prima facie case of age discrimination the plaintiff must establish that: (1) he was a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; (4) he was replaced by a substantially younger employee with equal or inferior qualifications. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885 (9th Cir.1994).

**13.** The Court notes that the candidate chosen for Vacancy No. 25124 was only four months younger than Plaintiff. *See* Pl.Opp. at 21. This fact suggests that the FAA was not biased against workers over 40. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (stating that the fact that employee was hired at age 51 undercut allegation of general bias against workers over the age of 40); *Brown v. McDonnell Douglas Corp.*, 113 F.3d 139, 142 (8th Cir.1997) ("simply incredible" to assume that defendant that had hired plaintiff at age 53 developed an aversion to older employees).